RICHARD MURRAY KLEBS *v.* STATE OF INDIANA.

[No. 3-873A103. Filed January 15, 1974. Rehearing denied February 21, 1974. Transfer denied May 3, 1974.]

*Foster, Stanish & Kouris,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *J. David Hollingsworth,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Klebs) was convicted in a bench trial of causing death while driving under the influence of liquor, IC 9-4-1-54, Ind. Ann. Stat. § 47-2001 (Burns 1973). Klebs was sentenced from one to two years and fined $500. The three issues in his overruled motion to correct errors are:

1. Was the proper foundation laid for admission of the breathalyzer test results;
2. Was it error to admit a copy of the test results rather than the original document; and
3. Was the evidence sufficient to support the verdict?

When viewed most favorably to the State, the evidence discloses that during the late afternoon and early evening hours of May 5, 1972, Klebs visited the House of Stewart's Restaurant and Lounge in Hammond, Indiana. While there he consumed a steak dinner and between eight to ten bourbon and waters over a three and a half hour period. After Klebs departed he was involved in a head-on collision with another automobile a short distance from the restaurant. The driver of the other car died as a result of the accident. Eyewitnesses testified that Klebs' auto had weaved across the center line of the road several times and that he had difficulty in negotiating a turn on to another street before the fatal collision.

Following the accident police officers took Klebs to the Hammond Police Station where Lieutenant Awe administered the breathalyzer test pursuant to IC 9-4-4.5-1 and -3, Ind. Ann. Stat. § 47-2003c and § 47-2003e (Burns 1973). The test results indicated .19% by weight of alcohol in Klebs' blood.

The Indiana legislature has provided that evidence of the alcohol content of a defendant's blood, as shown by a chemical analysis of his breath, is admissible as evidence. Evidence of .10% or more, by weight of alcohol in the defendant's blood, is prima facie evidence that he was under the influence of intoxicating liquor sufficiently to lessen his driving ability to such an extent as to endanger other persons using the public highways. IC 9-4-1-56, Ind. Ann. Stat. § 47-2003 (Burns 1973). Another statute sets forth certain requirements that must be met prior to the test results being accepted as evidence. That statute reads:

> "The director of the state department of toxicology of the Indiana University school of medicine is hereby authorized and empowered to adopt the necessary rules and regulations to set standards for the selection, training, certification and recertification of chemical test operators and to provide for the periodic inspection of chemical devices. *No chemical test for intoxication shall be considered as evidence for the purpose of this chapter* [9-4-4.5-1—9-4-4.5.6] *if it is not performed by a person certified as a valid operator by the state department of toxicology of the Indiana University school of medicine, and no equipment shall be used for such chemical tests which has not been inspected and approved under the rules and regulations* adopted by such department. . . ." (Emphasis added.) IC 9-4-4.5-6, Ind. Ann. Stat. § 47-2003h (Burns Code ed. 1973)[1]

The department of toxicology's rules and regulations filed pursuant to the foregoing statute provide in pertinent part:

---

1. This statute was amended by the General Assembly in 1973, effective as of July 26, 1973. The language as set out above remained substantially intact. The primary change was the addition of provisions dealing with the certificates issued by the state department of toxicology and their evidentiary significance. Additionally, the chemicals used in the test are also to be inspected and approved by the department of toxicology. See IC 9-4-4.5-6, Ind. Ann. Stat. § 47-2003h (Burns 1973).

"C. Certification and recertification of chemical test operators.

1. All persons who have successfully completed an approved course in the theory and operation of chemical test devices shall be certified as chemical test operators by the director of the department of toxicology.

2. Certification shall be valid for two [2] years from the date of certification. A certification card shall be issued to the certified operator and such card shall bear an expiration date.

3. Recertification procedure shall be determined by the director of the department of toxicology.

4. Those seeking recertification must attain a score of 70% or more on a written examination similar in content to the final examination given at the completion of the school for training chemical test operators and successfully completing actual breath tests using a chemical test device and a known water-alcohol solution in a breath test simulator. . . ." Ind. Admin. Rules and Regulations Rule (47-2003h)-1 (Burns 1973).

The final statutory provision of concern to the instant case reads:

"(d) The term 'chemical test' for the purposes of this chapter means an analysis by such *persons using such techniques* and equipment *as shall have been approved by the department of toxicology* of the University school of medicine of the breath, blood, urine or other bodily substance for the determination of the presence of alcohol or drugs, or a combination of alcohol and drugs in such quantities as to constitute intoxication or 'under the influence' as that term may be defined by statute." (Emphasis added.) IC 9-4-4.5-2, Ind. Ann. Stat. § 47-2003d (Burns Code ed. 1973).

From the foregoing statutes Klebs has extracted three requirements for a proper foundation for the admission of the test results. Those three requirements are:

1. The test was administered by an operator certified by the department of toxicology;

2. The equipment used in the test was inspected and approved by the department of toxicology, and

3. The operator used techniques approved by the department of toxicology.

It is the State's contention that these requirements were fulfilled.

We cannot conclude, as a matter of law, that the State sustained its burden in establishing a foundation for admission of the results of the breathalyzer test. There was a fatal evidentiary absence germane to each of the three requirements. There was no evidence to show the operator was certified within the two years prior to administering the test in the instant case as required by the rules prescribed by the department of toxicology. The operator's testimony said by the State to establish the machine's inspection and approval was as follows:

"Q. Did you know of your own knowledge of its inspection and operating efficiency?
A. Yes.
Q. Would you state to the Court the degree of operating efficiency of the machine that you used and of which you are testifying about. Or perhaps instead of efficiency I should say accuracy.
A. Plus or minus. I can't answer that."

We are of the opinion that this testimony falls short of establishing that the machine used to test Klebs had been properly inspected by the department of toxicology. Lieutenant Awe described the technique used to administer the test in response to a preliminary voir dire by Klebs' counsel, however, the record is devoid of any evidence to establish that the procedure described resembled the procedure approved by the department of toxicology.

It is axiomatic that error also existed in admitting a copy of the results of the breathalyzer test irrespective of Klebs' position that the Exhibit violated the Best Evidence rule.

Although we have determined that error exists, it is our conclusion that such error is not reversible because of other proof establishing Klebs' guilt. Independent testimony regarding the amount of intoxicants consumed and the erratic driving culminating in the death of another was sufficient to prove the essential elements of the offense charged.

Klebs points out that none of the State's witnesses were of the opinion that he was intoxicated before or after the collision and that the presence of strong paint fumes in his vehicle and the lack of sleep prior to the incident could account for the manner in which Klebs drove. Where two logical, but opposing, inferences are presented it is beyond the province of this court to determine which should be accepted by the trier of fact. *Young* v. *State* (1971), 257 Ind. 173, 273 N.E.2d 285. It is the trier of fact's province to decide which to believe. *Fisher* v. *State* (1973), 259 Ind. 633, 291 N.E.2d 76; *Cravens* v. *State* (1971), 257 Ind. 381, 275 N.E.2d 4. In determining whether the evidence was sufficient we will not weigh the evidence nor pass upon the credibility of witnesses, but will consider only that evidence together with the reasonable inferences that may be drawn therefrom which supports the verdict of the trial court. *Sanchez* v. *State* (1971), 256 Ind. 140, 267 N.E.2d 374; *Glover* v. *State* (1970), 253 Ind. 536, 255 N.E.2d 657. Nor will we disturb the judgment of the trial court if there is substantial evidence of probative value to establish every material element of the crime charged beyond a reasonable doubt. *Phillips* v. *State* (1973), 260 Ind. 321, 295 N.E.2d 592; *Dunn* v. *State* (1973), 260 Ind. 142, 293 N.E.2d 32.

Having found no reversible error the judgment of the trial court is affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 305 N.E.2d 781.