**Edward K. SELL, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 02A03–8603–CR–66.

Court of Appeals of Indiana,
Third District.

Aug. 27, 1986.

Michael L. Morrissey, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Edward Sell appeals his conviction for driving while intoxicated, raising four issues for our review:

I. Was there probable cause for the initial stop of Sell;

II. Did the trial court err in admitting evidence obtained as a result of the initial stop;

III. Was there a proper foundation for admission of the results of Sell's breath test; and

IV. Was there sufficient evidence to sustain Sell's conviction?

We affirm.

## I.

### Initial Stop

About 8:45 a.m. on May 18, 1985, State Trooper David Taylor was in the area of the 96 mile marker of I–69 when he observed that traffic was congested. A construction site had the right lane partially blocked, and Sell was driving 35–40 miles per hour in the passing lane, with traffic backed up for five or six car lengths behind him. Traffic in the right lane could not get in the passing lane because Sell had blocked traffic. The posted speed limit was 55 miles per hour. Taylor observed Sell driving this way for two to three minutes, and then when Sell exited I–69 Taylor stopped him for creating a traffic jam.

When Sell got out of his car, Taylor observed that he was shaking, stumbling, and staggering. He had a difficult time producing his license and registration for Taylor, and in fact had difficulty standing upright without Taylor's assistance. Sell's clothes were disorderly, his shirt was open, and he had the odor of alcohol on his breath. He told Taylor that he had been drinking at his girlfriend's house, and she had thrown him out. Taylor asked Sell if he would submit to a breath test and Sell agreed. The results indicated a .14% alcohol content.

■ Sell argues that Taylor did not have probable cause to stop him. Because the Fourth Amendment prohibits unreasonable searches and seizures, an investigatory stop must be reasonable in light of all the circumstances. *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368; *Williams v. State* (1974), 261 Ind. 547, 307 N.E.2d 457, 460. The police officer need not have probable cause to make an arrest, but must "point to specific and articulable facts which, taken together with rational inferences from those facts," reasonably warrant intrusion upon an individual's privacy. *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Gipson, supra,* 459 N.E.2d at 368. If facts known to the police at the time of the stop would lead a man of reasonable caution to believe that the action taken was appropriate, the command of the Fourth Amendment is satisfied. *Gipson, supra,* 459 N.E.2d at 368.

■ In the present case, Trooper Taylor observed Sell driving 35 to 40 miles per hour in a 55 mile per hour zone. Traffic was backed up for five or six car lengths behind him in the passing lane, and traffic from the right lane was unable to get into the passing lane to avoid whatever had the right lane partially blocked. Taylor watched Sell drive in this manner, with traffic backed up, for two to three minutes.

Sell argues that such facts did not warrant the stop, citing *Davis v. State* (1977), 174 Ind.App. 433, 367 N.E.2d 1163. In *Davis*, the court suggested in dictum that "an isolated incident of slow driving, temporary lane straddling, or even sitting through a green light without moving may merely show that the driver was inattentive or was engaged in some other innocent activity". *Id.* at 1165. The facts here indicate something more than an isolated incident, however. Sell drove 15 to 20 miles below the speed limit for two to three minutes, with traffic backed up and congested behind him. It was reasonable for

Trooper Taylor to believe that further investigation was warranted, and we find that his stop of Sell was proper.

## II.

### Admission of Evidence

Because we find that Sell's initial stop was reasonable, it was not error to admit evidence obtained as a result of that stop.

## III.

### Foundation for Test

After Sell was stopped, he was taken to the Allen County Police Department, read an implied consent warning, and given a breath test using the Intoxilyzer 5000. The test was administered by Officer Charles Lane, a certified test operator, on a machine that had recently been inspected. At trial, Lane described how he administered Sell's test and testified that he followed guidelines established by the Indiana Department of Toxicology. He was shown State's Exhibit 4, which he identified as the department of toxicology guidelines, and he read into the record those portions of the guidelines that he said applied to the Intoxilyzer 5000. Although marked as an exhibit, the copy of the guidelines was never admitted into evidence. Sell's breath test results registered his blood alcohol content at .14%.

■ Sell argues that the trial court erred in admitting the results of his breath test because a proper foundation was lacking. There are three foundational requirements for admission of breath test results:

(1) The operator administering the test was certified by the department of toxicology;

(2) The equipment used in the test was inspected and approved by the department of toxicology; and

(3) The operator followed procedures approved by the department of toxicology.

*Hartman v. State* (1980), Ind.App., 401 N.E.2d 723, 725. Sell concedes that the first two requirements were met. He argues, however, that the third requirement is lacking because the department guidelines were merely read into the record and the actual document was not admitted.

■ In *Klebs v. State* (1974), 159 Ind. App. 180, 305 N.E.2d 781, this court found that the requirement of proof of approved procedures had not been satisfied. The test operator described the procedures he used, in response to a preliminary voir dire, but there was no evidence that they resembled the procedures approved by the department of toxicology. Similarly, in *Hartman v. State, supra,* a videotape portraying the procedure used was held insufficient absent evidence that department guidelines were followed. A mere assertion by the test operator that the department guidelines were followed will not correct this problem, and such an assertion was found insufficient by itself in *Boothe v. State* (1982), Ind.App., 439 N.E.2d 708.

Sell argues that, applying these precedents, it was error to admit his breath test results absent admission of a copy of the department of toxicology guidelines for such tests. We do not agree. We note first that, although Ind. Code 9–11–4–5(c)(3) provides that a certified copy of the department of toxicology rules or guidelines is *prima facie* evidence that the approved procedure was followed, the statute does not make this the exclusive method of proof. *Grogan v. State* (1985), Ind.App., 482 N.E.2d 300, 306. Neither do the cases Sell cites require that a copy of the department guidelines be introduced into evidence. What the cited cases do require is that there be some evidence as to what the approved procedures were. By having the test operator read into the record the applicable procedures from the department guidelines and testify that he followed these procedures, the State has provided such evidence.

■ Sell argues further that the department guidelines which were read into the record did not apply to the Intoxilyzer 5000, and thus could not be evidence that approved procedures were followed. This argument fails as well. Even though it

does not require chemicals, the intoxilyzer is a chemical test under IC 9–11–1–3, because it is "an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance, or a drug." Department of toxicology regulations generally applicable to chemical tests encompassed the intoxilyzer test, *Husk v. State* (1985), Ind.App., 476 N.E.2d 149, 150–51, and evidence of them satisfied the foundational requirement of proof that approved test procedures were used. The trial court did not err in admitting Sell's breath test results into evidence.

### IV.

#### *Sufficiency of the Evidence*

Sell argues that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, we will not weigh the evidence or judge the credibility of witnesses. We will consider the evidence most favorable to the State and all reasonable inferences to be drawn from it. If there is substantial evidence of probative value on each element of the offense, the judgment will not be disturbed. *Husk v. State* (1985), Ind.App., 476 N.E.2d 149, 151.

On the morning of Sell's arrest, Trooper Taylor observed him driving 15 to 20 miles below the speed limit in the passing lane of I–69, backing up traffic for five or six car lengths behind him. When Taylor stopped Sell, Sell was shaking and staggering, he had a difficult time producing his license and registration or standing up, his clothes were disorderly, and he had the odor of alcohol on his breath. He told Taylor he had been drinking at his girlfriend's house and she threw him out. The results of his breath test indicated that his blood alcohol level was .14%. This evidence is more than adequate to support Sell's conviction for driving while intoxicated.

We affirm.

HOFFMAN and GARRARD, JJ., concur.