**Kurt F. BOWMAN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 20A03–9006–CR–239.**

Court of Appeals of Indiana, Third District.

Dec. 19, 1990.

Rehearing Denied Feb. 22, 1991.

**310**

P. Michael Parker, C. Kenneth Wilber, Barnes & Thornburg, Elkhart, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Kurt F. Bowman appeals his convictions for operating a vehicle while intoxicated, causing death and operating a vehicle with blood alcohol level of .10% or more, resulting in death, both Class C felonies, for which he was sentenced to five (5) years in prison. His appeal presents us with the following two issues:

   I.  Whether the trial court erred in admitting the breathalyzer test results when the breathalyzer operator admitted he did not follow the procedures mandated by the Indiana Department of Toxicology.

  II.  Whether the trial court erred by failing to give Bowman's tendered instruction on causation.

We affirm in part and reverse in part.

Kurt Bowman was the driver in a one car accident in Elkhart County, Indiana. His passenger, Brenda Davis Keyser, was not wearing a seat belt and sustained severe injuries which later proved to be fatal. Bowman told police that he had only six drinks in the previous five hours, but the investigating officers observed alcoholic beverage containers in the area and noted that Bowman's speech was thick-tongued, his eyes were bloodshot, his manual dexterity was poor, his balance was unstable, and he exhibited a strong odor of alcohol. Although he passed a field sobriety test requiring him to count backwards, he failed the finger-to-nose test and the heel-to-toe walking test.

Bowman was transported to the Bristol Police Department, where a breathalyzer test was administered. His blood alcohol content (BAC) registered .14% on the machine.

After a jury trial, Bowman was convicted of operating a vehicle while intoxicated, causing death (DWI death), and operating a vehicle with blood alcohol level of .10% or more, resulting in death (BAC death). He was sentenced to one term of five years for both Class C felonies. He appeals.

## I.

### *Admissibility of Breathalyzer Test*

■ For his first assignment of error, Bowman contends that the trial court erred in admitting the breathalyzer test into evidence because improper procedures were used in its administration.

The admissibility of the results of a breathalyzer test is governed by Indiana Code 9–11–4–5, which provides in relevant part:

Sec. 5. (a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules, under IC 4–22–2, concerning:

\* \* \* \* \* \*

(3) the certification of the proper technique for administering a breath test.

\* \* \* \* \* \*

(d) *Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this article if:*

(1) the test operator;

(2) the test equipment;

(3) the chemicals used in the test, if any; or

(4) *the techniques used in the test; have not been approved in accordance with the rules adopted under subsection (a).*

(Emphasis added).

Pursuant to this statutory mandate, the State Department of Toxicology promulgated several rules governing the administration of breathalyzer tests. 260 IAC 1.1–3–1(a) and (b) provide:

Sec. 1(a) the director shall approve a method for the administration of a test to analyze breath for ethanol for each approved type of equipment in use. Such approved method shall be kept on file in the state department of toxicology of Indiana University School of Medicine.

(b) Such approved method *shall* be followed in making an analysis of breath for ethanol.

(Emphasis added). The approved breathalyzer test method, consisting of twelve steps, is set out in 260 IAC 1.1–4–1. Step twelve states:

(12) After completing the breath alcohol test as described, the operator must record the test ampoule control number and the instrument serial number on the form used to record the breath alcohol result.

It is undisputed that the test ampoule control number was not recorded on the form used to record the breath alcohol result in this case. The State contends, however, that the parties stipulated that the officer administered the test using the approved techniques. A cursory review of the record belies this contention. Bowman merely stipulated that the procedure contained on the form used by the officer constituted the approved method, not that the officer followed the procedure.

The State next contends that recordation of the ampoule control number is not a "technique used in the test" within the meaning of Indiana Code 9–11–4–5(d), but is merely an "administrative housekeeping duty" following the test. Regardless of the State's characterization of the duty set forth in the regulation, a valid regulation has the force and effect of law. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210, 1213. The failure to comply with the regulations has the consequence set out in the statute—inadmissibility of the results of the breath test. Moreover, the recordation requirement clearly has the purpose of facilitating the verification of the accuracy of the test, a concern which certainly has bearing on both the weight and admissibility of the test. Introduction of a breath test lends the aura of scientific certainty to a prosecution for driving while intoxicated, often sealing the fate of the offender in the mind of the trier of fact. Thus, the detailed procedures to be followed reflect a determination that the test should be as accurate and free from uncertainty as possible.

The State finally argues that it introduced other evidence from which the ampoule control number could reasonably be inferred, consisting of the fact that the same ampoule lot had been used in earlier

and later tests. It is just this sort of speculation which the recordation requirement seeks to avoid. The statute and the regulations clearly contemplate strict compliance, and there is no indication that this requirement can be circumvented by the introduction of other inherently less reliable evidence.

■ We therefore hold that the trial court erred in admitting the breathalyzer test into evidence. This error was prejudicial, in that there was no other evidence introduced which established that Bowman's B.A.C. exceeded .10% in support of the conviction for BAC death. Accordingly, we reverse Bowman's conviction for BAC death.

Our determination, however, does not affect Bowman's conviction for DWI death, as we find that there was substantial evidence of probative value to support the inference that Bowman was intoxicated. Police officers at the scene testified that Bowman's eyes were bloodshot, his speech was thick-tongued, his manual dexterity was poor, his balance was unsteady, he exhibited a strong odor of alcohol, and he failed two field sobriety tests. Moreover, the investigating officer testified that in his opinion, Bowman appeared intoxicated. We find this evidence sufficient to establish intoxication, even absent the breathalyzer test. *Accord, Boothe v. State* (1982), Ind. App., 439 N.E.2d 708, 712, *transfer denied.*

## II.

### *Instruction on Causation*

■ Bowman next challenges the trial court's refusal to give his instruction on causation. Upon a claim that the refusal of a tendered instruction was erroneous, we examine the tendered instruction to determine 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given.

*Reinbold v. State* (1990), Ind., 555 N.E.2d 463. Bowman's challenge runs afoul of the first prong of our analysis.

Bowman tendered the following instruction on causation:

The State of Indiana has charged that Kurt Bowman operated a vehicle with .10%, or more, by weight of alcohol in his blood and operated a vehicle while intoxicated, which offenses resulted in the death of Brenda Keyser. If you find that Mr. Bowman committed the offense of either operating a vehicle with .10%, or more, by weight of alcohol in his blood or operated a vehicle while intoxicated, you must further find that Mr. Bowman's operation of his vehicle was the immediate, nearest, or direct cause of Ms. Keyser's death before you may find him guilty of conduct resulting in her death.

In determining what was the immediate, nearest or direct cause of Ms. Keyser's death, you must consider whether or not the acts of Ms. Keyser interfered with Mr. Bowman's operation of his vehicle to the extent that such acts were a direct cause of the accident which resulted in her death.

You must also consider whether the immediate, nearest, or direct cause of Ms. Keyser's death was her failure to wear the safety belt available for passenger use in Bowman's vehicle.

If you find that one or more of the acts of Ms. Keyser were a direct cause of the accident which resulted in her death, or if you find that her failure to wear the available safety belt was the direct cause of her death, you must find Kurt Bowman not guilty of the offenses charged by the State.

Record, p. 47. Bowman specifically argues on appeal that he introduced evidence at trial which tended to show that Brenda Keyser's failure to wear a seatbelt was the cause of her death, and therefore he was entitled to the above instruction.[1] He points to the testimony of a physician who testified that Ms. Keyser would not have sustained any serious injury from the acci-

---

1. Evidence was also introduced that Ms. Keyser fell against Bowman as he was driving. In Bowman's effort to right her, the car left the road prior to the accident. Bowman does not argue on appeal that this series of events supports his instruction on causation.

dent if she had been wearing a seatbelt, as well as the fact that he himself sustained no injuries in the accident.

The concept of causation in criminal law is similar to that found in tort law. Like in tort law, the criminal act must be both 1) the actual cause (sometimes called the "cause-in-fact"); and 2) the legal cause (sometimes called the "proximate cause") of the result. 1 LeFave and Scott, *Substantive Criminal Law* § 3.12, p. 392. Cause-in-fact requires that "but for" the antecedent conduct, the result would not have occurred. *Id.* at 394. If there is more than one cause which precipitates the result, the defendant's action is the cause-in-fact if it is a "substantial factor" in bringing about that result. *Id.*

Legal or proximate cause is a distinct concept, speaking not to the physical relationship between the actor's conduct and the result, but instead embodying a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible. Thus, proximate cause questions are often couched in terms of "foreseeability"; an actor is not held responsible for consequences which are unforeseeable. In Indiana, a result is deemed foreseeable if it is a "natural and probable consequence" of the act of the defendant. *Outlaw v. State* (1985), Ind., 484 N.E.2d 10, 13.

In cases where an action of the victim, a third party, or a non-human source affects the chain of causation, foreseeability is again a factor. LeFave, *supra*, § 3.12 at 406–407. Such an occurrence is called an "intervening cause", and it becomes a superseding cause breaking the chain of causation if it was not foreseeable. *Id.; Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10, 14. If an intervening and superseding cause aided in bringing about the result, the defendant is not criminally liable.

Bowman's contention on appeal, and the basis of his tendered instruction, appears to be that Brenda Keyser's failure to wear her seatbelt was an intervening and superseding cause of her death which absolved him of criminal liability. However, it is clearly foreseeable that an automobile passenger might fail to wear a seatbelt. This is particularly true in the present case, where Bowman testified that he asked Keyser to wear her seatbelt and she declined. Thus, Bowman had actual knowledge that she was not wearing her seatbelt. Consequently, Bowman's instruction was an incorrect statement of the law because even if the jury found that Ms. Keyser would not have been injured had she worn her seatbelt, Bowman could still be held criminally liable for her death.

The instruction given by the court properly informed the jury that they were required to determine whether Bowman's conduct caused Brenda Keyser's death, and they could reasonably have concluded that, but for Bowman's intoxication, she would not have been killed, as well as that her death was a natural and probable consequence of Bowman's act of driving while he was intoxicated. We find no error in the failure of the trial court to give Bowman's tendered instruction on causation.

Accordingly, we affirm Bowman's conviction for DWI death, but reverse his conviction for BAC death and remand for a new trial on that count. The trial court's sentencing of Bowman for one term for both counts charged will require a resentencing on remand.

RATLIFF, C.J., and HOFFMAN, J., concur.