**STATE of Indiana, Appellant–Plaintiff,**

v.

**Charles R. ALBRIGHT, Appellee–Defendant.**

**No. 11A01–9303–CR–83.**

Court of Appeals of Indiana,
First District.

Oct. 28, 1993.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellant-plaintiff.

William G. Smock, Terre Haute, for appellee-defendant.

NAJAM, Judge.

### STATEMENT OF THE CASE

The State of Indiana appeals an order of the Clay Superior Court granting Charles R. Albright's motion to suppress the results of a breath test for intoxication. The State charged Albright with operating a motor vehicle while intoxicated,[1] a Class A misdemeanor; operating a motor vehicle with a blood-alcohol content of .10% or greater,[2] a Class C misdemeanor; and a seat belt violation,[3] a Class D infraction. Following a hearing, the trial court granted Albright's motion to suppress. This appeal is taken pursuant to Indiana Code § 35–38–4–2(5). We affirm.

### ISSUES

The following issues are presented on appeal:

1. Whether the State's unsupported contention that suppression of the Intoxilyzer test results precludes further prose-

---

1. IND.CODE § 9–11–2–2 (repealed 1991, now IND.CODE § 9–30–5–2).

2. IND.CODE § 9–11–2–1 (repealed 1991, now IND.CODE § 9–30–5–1).

3. IND.CODE § 9–8–14–1 (repealed 1991, now IND.CODE § 9–19–10–2).

cution is sufficient in itself to invoke the State's right under Indiana Code § 35–38–4–2(5) to appeal the trial court's order granting the motion to suppress.

2. Whether the trial court erred in granting Albright's motion to suppress the results of his Intoxilyzer test.

### FACTS

On the morning of May 5, 1991, between approximately 2:48 and 2:58 a.m., Indiana State Police Trooper Darrell Jones ("Jones") was driving his police car in downtown Brazil, Indiana. As Jones approached an intersection where he had the right of way, he observed a vehicle proceeding through an alley toward him. The vehicle appeared to be exceeding the 30 miles per hour speed limit. The driver, Albright, attempted to stop but his vehicle slid into the intersection, missing Jones by four or five feet.

Jones immediately exited his police car and approached Albright's vehicle. At the same time, Albright put his vehicle in reverse and began to back up. Jones yelled for him to stop, and Albright complied. Jones then asked Albright to shut off his vehicle and get out. When Albright opened the door, Jones smelled the odor of alcoholic beverages coming from within the vehicle and on Albright's breath. Albright's eyes were watery, red and bloodshot, and he was unsteady on his feet.

Concluding that Albright was under the influence of alcohol, Jones immediately handcuffed Albright behind his back and read the implied consent advisement to him. See IND.CODE § 9–30–6–2. Jones administered an alcosensor test at the scene, which Albright failed, but Jones did not check Albright's mouth for foreign substances prior to the test. Before proceeding to the Clay County Jail, Jones did check Albright's mouth and found nothing in it.

At the jail, Albright took a number of field sobriety tests, passing one and failing two others. Jones testified that he then waited twenty minutes according to his wristwatch and administered a breath test on an Intoxilyzer 5000. Jones also filled out a checklist, noting that this test was given at 3:14 a.m. Jones calculated the time from his wristwatch because he believed the Intoxilyzer clock was "off a little." Record at 54. Upon completion of the first test, Jones noticed Albright chewing on something that appeared to be peanut hull fragments, which Jones had not observed when he first looked into Albright's mouth at the scene. Jones administered a second test "a few minutes after" so there would be two test results with the substance in Albright's mouth. Record at 56–57.

Immediately following the second test, Jones requested that Albright rinse his mouth. A third test was administered at 3:38 a.m., although Jones testified that he waited 24 or 25 minutes after Albright had rinsed his mouth. On the third test Albright registered a blood-alcohol content of .18%, and he was then charged. Jones used a different mouthpiece for each test but only filled out a checklist for the first test, at 3:14 a.m. However, Jones testified that he followed each step of the approved method in administering all three tests.

### DISCUSSION AND DECISION

#### Standard of Review

The State contends that the trial court erred in granting Albright's motion to suppress the results of his breath test. The State had the burden of proof in establishing a foundation for admission of the test results. *Klebs v. State*, 159 Ind.App. 180, 183, 305 N.E.2d 781, 783, *trans. denied, cert. denied,* (1974), 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107; *see also Biggs v. State* (1929), 201 Ind. 200, 167 N.E. 129 (defendant in a criminal action bears no burden of proof). Therefore, the State is appealing from a negative judgment and on appeal must show that the trial court's ruling was contrary to law. *State v. Blake* (1984), Ind.App., 468 N.E.2d 548, 550. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We consider only the evidence most favorable to the judgment and do not reweigh the

evidence or judge the credibility of the witnesses. *State v. McLaughlin* (1984), Ind. App., 471 N.E.2d 1125, 1136, *trans. denied.*

### Issue One: Right to Appeal

The right of the state to appeal in a criminal action is statutory, and unless there is a specific grant of authority by the legislature, the state cannot appeal. *State v. Huebner* (1954), 233 Ind. 566, 567, 122 N.E.2d 88, 89. Indiana Code § 35–38–4–2 specifies those instances in which the state may appeal, including:

"(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution."

Although the State contends without argument that the suppression of the Intoxilyzer test results precludes further prosecution, we will "accept the State's assertion in taking such an appeal that the ultimate effect of the order of suppression is to prevent further prosecution." *State v. Williams* (1983), Ind.App., 445 N.E.2d 582, 585 (Garrard, J., concurring). We will not weigh the sufficiency of the evidence available to continue prosecution, nor second-guess the State, in concluding that the "order is tantamount to a dismissal and therefore appealable." *Id.* at 584 (citing *State v. Tindell* (1980), Ind., 399 N.E.2d 746, 747).

However, the State's assertion is a condition precedent to appeal, and as Judge Garrard suggested in his separate opinion in *Williams*, "[t]he formal assertion by the state ... should constitute a judicial admission for purposes of the prosecution in question...." *Id.* at 585. Thus, we will accept the State's assertion that the ultimate effect of the order is to preclude further prosecution and will address the appeal on its merits, but if we affirm the order to suppress, the State shall be bound by its judicial admission that further prose-

cution of Albright is precluded. *See id.* (Garrard, J., concurring) ("if the appeal is lost the state should then be precluded or estopped from further prosecution in the cause").

### Issue Two: Admissibility of Intoxilyzer Test

Albright based his written motion to suppress on two grounds. In the first, Albright asked the trial court to determine whether there was probable cause to arrest him and to administer the breath test and sought to suppress the breath test results for lack of probable cause. Albright's second ground was that Jones did not follow the approved method when administering the third Intoxilyzer 5000 test, the results of which were the basis for the charges filed.[4]

The trial court entered an order granting the motion which stated: "Court now grants defendant's Motion to Suppress and now orders any and all reference to chemical test administered in this cause and State is prohibited from mentioned [sic] same for purposes of trial." Record at 37. Thus, Albright's motion to suppress was granted, but the charges against him were not dismissed.[5]

The admissibility of breath test results is governed by Indiana Code § 9–11–4–5,[6] (hereinafter "Section 5"), which provides in relevant part:

"Sec. 5. (a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules, under I.C. 4–22–2, concerning:

. . . .

(3) the certification of the proper technique for administering a breath test.

. . . .

(d) Results of chemical tests that involve an analysis of a person's breath are

---

**4.** Although the authorities cited use the phrase "approved techniques", "approved procedures" and "approved method" interchangeably, we will use "approved method" in this opinion.

**5.** Because we affirm the trial court's suppression order and direct that this action be dismissed, *See Issue One,* we need not consider

Albright's contention that the police officer lacked probable cause to arrest him and to administer the breath test. However, we agree with the dissenting opinion that there was probable cause.

**6.** IND.CODE § 9–11–4–5 was repealed in 1991, and is now IND.CODE § 9–30–6–5.

not admissible in a proceeding under this article if:

(1) the test operator;

(2) the test equipment;

(3) the chemicals used in the test, if any, or

(4) the techniques used in the test;

have not been approved in accordance with the rules adopted under subsection (a)."

The language of Section 5(d) controls admissibility of the test results. Pursuant to the statutory mandate, the Department of Toxicology has promulgated rules for administration of breath tests generally (the "rules"), including Indiana Administrative Code, title 260, rule 1.1–3–1(a)–(c), which provides:

"Sec. 1(a) The director shall approve a method for the administration of a test to analyze breath for ethanol for each approved type of equipment in use. Such approved method shall be kept on file in the state department of toxicology of Indiana University school of medicine.

(b) Such approved method shall be followed in making an analysis of breath for ethanol.

(c) The director may approve and distribute a checklist that sets forth in abbreviated form the approved method for the administration of a test to analyze breath for ethanol for each approved type of equipment in use."

In addition, the approved Intoxilyzer 5000 test method, consisting of six steps, is set out in Indiana Administrative Code, title 260, rule 1.1–4–4. While each step is relevant here, the critical issue involves step one, which states:

"(1) The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his/her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken."

■ Section 5 and the rules require strict compliance with the approved method. *Bowman v. State* (1990), Ind.App., 564 N.E.2d 309, 312, *modified on other grounds* (1991), Ind., 577 N.E.2d 569. A valid rule has the force and effect of law. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210, 1213. Failure to comply with the rules has the effect set out in the statute: the results of the breath test are inadmissible. *Bowman*, 564 N.E.2d at 311.

In this case, the parties dispute the State's compliance with the rules in two respects: (1) whether the State met a necessary foundational element of admissibility by failing to complete a "checklist" and (2) whether step one of the method approved in 260 IAC 1.1–4–4 was followed.

### Checklist

■ Albright contends that the third test was flawed and, therefore, inadmissible because Jones failed to complete a checklist. We do not agree. Pursuant to Section 5, a checklist "sets forth in abbreviated form the approved method for the administration of a test to analyze breath for ethanol," as provided by the Department of Toxicology in 260 IAC 1.1–3–1(c). However, this rule does not require a checklist; rather it states that "the director *may* approve and distribute a checklist." (emphasis added).

■ Our courts have consistently held that the necessary foundation requires proof that the approved methods have been followed. *Gokey v. State* (1987), Ind.App., 510 N.E.2d 703, 704, (citing *Boothe v. State* (1982), Ind.App., 439 N.E.2d 708, *trans. denied* and *Hartman v. State* (1980), Ind. App., 401 N.E.2d 723). In *Gokey*, we held that the proper foundation could be established by repeating the steps of the approved method as questions to the administering officer, so as to elicit testimony that he had followed them. *Id.* at 706. It is also sufficient for the officer to read the steps of the approved method into the record himself and testify that he complied with them. *Sell v. State* (1986), Ind.App., 496 N.E.2d 799, 801. However, a mere categorical assertion by the test operator that the approved method was followed is not sufficient in itself. *Boothe*, 439 N.E.2d at 711.

Here, Jones was questioned on direct examination concerning the steps he took in administering the breath test to Albright. The questions followed the six step method set out in 260 IAC 1.1–4–4 and elicited affirmative responses from Jones, indicating that he followed the approved method. Record at 56–60. As noted earlier, admissibility is controlled by Section 5(d), which simply requires that the method used be in accordance with the rules for the approved method set out in 260 IAC 1.1–4–4. *Grogan v. State* (1985), Ind.App., 482 N.E.2d 300, 306, *trans. denied; Sell v. State*, 496 N.E.2d at 801. Thus, we conclude that the State is not required to introduce a copy of the completed checklist, and it was not fatal to the State's case that a checklist was not completed for the third test.

### Observation Period

■ The State contends that the "uncontested and uncontradicted evidence" shows the Intoxilyzer 5000 test was conducted using the approved method. Appellant's Brief at 5, 9, and 10. Step one of the approved method requires a 20 minute time period prior to the test during which the subject may not have had any foreign substance in his mouth. The time is measured from initiation of the test backwards and is considered an "observation period". *Sullivan v. State* (1988), Ind.App., 517 N.E.2d 1251, 1253, *trans. denied; Livingston v. State* (1989), Ind.App., 537 N.E.2d 75, 77. That requirement relates to the reliability of the results, because foreign substances like food, smoke or water may alter the blood-alcohol content reading. *Tyner v. State* (1987), Ind.App., 503 N.E.2d 444, 448. Thus, the statute requiring use of the approved method signifies that this method is crucial to admissibility. *Id.*

■ The evidence adduced at the suppression hearing is inconclusive regarding the 20 minute observation period. In its argument the State emphasizes Jones' testimony that he waited 24 or 25 minutes before administering the third Intoxilyzer test. Record at 55; Appellant's Brief at 4 and 9. However, the State ignores the recorded times of the first and third tests and Jones' inconsistent testimony concerning the time when the second test was conducted.

The first test was recorded by Jones on the checklist at 3:14 a.m., and the third test was administered at 3:38 a.m. The time of the second test was not recorded, but Jones testified on direct examination that he administered it "a few minutes after" the first test. Record at 56. Jones also testified that, after completing the second test, he had Albright rinse out his mouth, waited 24 or 25 minutes, and then checked Albright's mouth again before giving him the third test. Record at 55. However, Jones confirmed on cross-examination that the tests were administered at 3:14, 3:18 and 3:38 a.m. Record at 85.

On these facts the evidence supports Albright's contention that "simple arithmetic shows that [Jones] could not have waited 24 or 25 minutes between the result of the second test and the administration of the third test." Appellee's Brief at 10. If, as Jones testified, he administered the second test "a few minutes after" the first, it was impossible for 24 or 25 minutes to have elapsed before he administered the third test. The court could well have concluded that Jones' testimony concerning the period of time between the second and the third test was too unreliable to establish with certainty that a full 20 minutes had elapsed between the two tests. Thus, we cannot say that all reasonable inferences lead to a conclusion opposite that of the trial court.

### CONCLUSION

The evidence supports the conclusion that the administration of the third Intoxilyzer test was commenced within the 20 minute observation period and, thus, was in violation of the approved method set out in 260 IAC 1.1–4–4(1). The statute and rules require strict compliance. *See Bowman*, 564 N.E.2d at 312. The trial court's order granting Albright's motion to suppress was not contrary to law. However, the State is bound by its judicial admission that further prosecution is precluded and, therefore, is estopped from further prosecution of Albright. We remand and direct the trial

court to enter an order dismissing this cause.

The order is affirmed and remanded with instructions.

BAKER, J., concurs.

SHIELDS, J., concurs in part and dissents in part with separate opinion.

SHIELDS, Judge, concurring in part and dissenting in part.

I fully concur in Issue One which addresses the ramification of the State's appeal. I also fully concur in the majority's determination of the Checklist aspect of Issue Two. However, I dissent on the majority's determination of the Observation Period aspect of Issue Two. In my opinion, the trial court erred to the extent it may have granted Albright's motion to suppress on the grounds that Jones did not follow Step One of the the approved procedure in administering the third Intoxilyzer 5000 test. This step of the approved procedure requires a 20 minute time period prior to the test, during which the subject may not have had any foreign substance in his mouth. In my opinion, the undisputed evidence adduced at the suppression hearing compels the conclusion that the 20 minute period was observed.

The undisputed evidence is that Officer Jones gave Albright an initial Intoxilyzer test following which he "saw some fragments of what appeared to [Jones] to be possible to be a hull off of some peanuts which [Albright] must have had hidden in his mouth." Record at 54. Jones explained:

A. So if he had it in there he must have had them in there and been eating them and then concealed something in his mouth during the time that I took him from the scene to the jail during that twenty minutes and I did not know that he had anything in his mouth until after he'd taken the first test. So I finally determined that he did have something in his mouth and I told him that I could charge him with refusal and if he rinsed his mouth out and take another test I would wait at

least twenty minutes then to take another test and he agreed, finally, to do that *but before we did that I immediately give him another test so that I would have two tests showing what the results were with the article that he had in his mouth and then I waited at least, I think it was twenty-four or twenty-five minutes after having him rinse his mouth, still handcuffed and I checked his mouth again and went back and took the third test* which he tested one percent lower than he had on the two prior tests.

Q. One percent of one-one-hundred of a percent?

A. One-hundredith [sic] of a precent [sic] lower than he did prior to that *and I used the lower of the three tests and the one after he had rinsed his mouth and waited an additional twenty-four minutes* to use to charge him with driving while intoxicated.

* * * * * *

Q. The result ... I mean why was he tested the second time?

A. I tested him the second time immediately, I had never had this happen to me in ten years, the purpose for me testing him the second time, right then, was so that if they were to argue that something he had in his mouth had influenced the instrument or caused it to be a higher or lower reading, I would have two tests exactly the same, showing that the instrument, that there is nothing wrong with the instrument and also that whatever he had in his mouth had not effected [sic] the test and *then I waited the additional amount of time after having cleaned his mouth out and the next test* had now gone down any more than the normal blood alcohol would decrease in that amount of time. It was just to show the court if it needed to be so, that there was nothing wrong with the instrument.

Record at 55–57 (emphasis added).

In my opinion, the foregoing evidence is susceptible of only one conclusion—that

the third Intoxilyzer test was given more than twenty minutes *after* Jones discovered the substance in Albright's mouth and *after* Albright had rinsed his mouth.

Furthermore, this evidence is uncontradicted. The majority opinion recites that an initial test was administered at 3:14 a.m., a second test was administered a few minutes later, and a third test was administered at 3:38 a.m. However, my perusal of the transcript of the evidence of the suppression hearing reveals that the only times that appear in the evidence are 2:48 and 2:58 a.m., the times which Jones testified he gave Albright the traffic ticket and observed him "to make sure that he didn't have anything in his mouth," respectively. The figures "3:14," "3:18," and "3:38" appear only once, during the cross-examination of Officer Jones, as follows:

Q. You did not [check the department time and compare it to the display time] on the first test, second test or the third test?

A. No.

Q. The one at 3:14, 3:18 or 3:38?

A. No, I compared it with my watch, not the department time.

Record at 84–85. Albright's counsel's question, to which Jones responded in the negative, is not evidence that the second Intoxilyzer test occurred at 3:18 a.m. nor is it evidence that the third test occurred at 3:38 a.m. Therefore, as I stated earlier, the uncontradicted evidence is that Jones waited for more than twenty minutes between the second and third Intoxilyzer tests. Consequently, the trial court erred to the extent it may have suppressed the Intoxilyzer test results based upon a foundational deficit.

Hence, I must consider the alternative basis upon which the trial court could have suppressed the test results—its determination that probable cause did not exist to arrest Albright and to administer the breath test. Probable cause did exist, in my opinion, and therefore, the trial court erred if it granted Albright's motion to suppress on this basis. The evidence reveals that Jones had a reasonable suspicion to justify a brief investigatory stop of Al-

bright which, in turn, revealed sufficient evidence to establish probable cause for Albright's arrest. *Platt v. State* (1992), Ind., 589 N.E.2d 222, 225.

Jones observed Albright speeding down an alley, in excess of the speed limit, in the early morning hours and when Albright tried to stop at the intersection of the alley and a city street, he slid and nearly collided with Jones who had the right-of-way. Upon sighting Jones, in his police uniform, exiting a marked police car, Albright backed up hurriedly and almost struck some railroad ties before he stopped his car again. As Jones talked to Albright he observed that Albright had the odor of alcoholic beverages upon himself and in his car; that his eyes were watery and bloodshot; and that Albright was unsteady when he exited his car. Albright also failed several sobriety field tests and an alcosensor field test indicated Albright had a blood-alcohol content of .20%. Based upon this uncontradicted evidence the trial court erred if it determined that probable cause did not exist for Albright's arrest; probable cause existed as a matter of law.

I vote to reverse the decision of the trial court suppressing the evidence surrounding the Intoxilyzer test results.