Michael C. MULLINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S02–9501–CR–1.

Supreme Court of Indiana.

Jan. 4, 1995.

J.J. Paul, III, Symmes, Voyles, Zahn, Paul & Hogan, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case comes to us on the State's petition to transfer the decision of the Court of Appeals in *Mullins v. State* (1994), Ind.App., 629 N.E.2d 886, *disapproved by Baran v. State* (1994), Ind., 639 N.E.2d 642, 647 n. 8, *reh'g pending.* Ind.Appellate Rule 11(B). The Court of Appeals reversed Mullins's conviction for operating a vehicle with at least ten-hundredths percent (0.10%) by weight of alcohol in his blood. It reversed the conviction because, it concluded, the printout from the breath-analysis machine that the State offered to prove the amount of alcohol in Mullins's blood at the time he was arrested did not indicate any units of measurement. *Mullins,* 629 N.E.2d at 887. Consequently, the Court of Appeals opined, the evidence was insufficient to sustain Mullins's conviction. For the reasons given in our opinion in *Baran v. State,* we grant transfer.

### Facts

After a bench trial on August 7, 1992, Michael Mullins was acquitted of operating a vehicle while intoxicated,[1] but he was convicted of operating a vehicle with at least ten-hundredth's percent (0.10%) by weight of alcohol in his blood, a Class C misdemeanor.[2]

The facts most favorable to the verdict show that on January 20, 1992, at approxi-

---

1. Ind.Code Ann. § 9–30–5–2 (Burns 1991).

2. Ind.Code Ann. § 9–30–5–1 (Burns 1991).

mately 11:30 p.m., Mullins and two female friends were drinking at a bar not far from the intersection of Rockville Road and Interstate 465. At approximately 2:00 a.m. in the morning of January 21, Indiana State Police Trooper Jeffrey Hearon saw a black Datsun that was weaving and travelling slower than the traffic flow on southbound I–465 near Rockville Road.

Trooper Hearon stopped the Datsun and asked Mullins, the driver, for his driver's license and registration. Trooper Hearon noticed that Mullins's eyes were red and glassy, that there was an odor of alcohol on his breath, and that his speech was slurred. Trooper Hearon asked Mullins if he had been drinking, to which Mullins replied that he had had a few beers.

Trooper Hearon gave Mullins an Alco–Sensor test, arrested him, and took him to the Speedway police department. At the Speedway police station, Trooper Hearon gave Mullins a field sobriety test followed by a breath test. The breath-analysis machine, a BAC Datamaster with a keyboard, printed out the results on an "evidence ticket." The printout read as follows:

BAC Datamaster

Evidence Ticket

JANUARY 21, 1992

. . . .

—BREATH ANALYSIS—

| | | |
|---|---|---|
| BLANK TEST | .00 | 02:38 |
| INTERNAL STANDARD | VERIFIED | 02:38 |
| SUBJECT SAMPLE | .20 | 02:39 |
| BLANK TEST | .00 | 02:40 |

Including the issue that the Court of Appeals decided in his favor, Mullins raises four issues for us to decide.[3] We state those issues as:

I. Whether the numbers on the "evidence ticket" were sufficient evidence that the amount of alcohol in Mullins's blood was greater than ten-hundredths percent by weight.

II. Whether the State laid a sufficient foundation demonstrating what the approved procedures for administering a breath test were and that Trooper Hearon followed those procedures.

III. Whether the breath-test machine used to test Mullins was properly certified.

IV. Whether the State laid a sufficient foundation showing that the breath-test machine used to test Mullins was working properly.

Mullins raises three issues that the Court of Appeals did not reach. These issues all involve the statutes governing the admission of breath-test results. Because the interaction of the statutory framework is complex, for ease of reference we now set out the statutes involved in a footnote before addressing each of Mullins's arguments in turn.[4]

---

3. Indiana Appellate Rule 11(B)(3) provides that if transfer of a cause has been granted, "The Supreme Court shall have jurisdiction of the appeal as if originally filed therein...."

4. Indiana Code Annotated § 9–30–6–15 (Burns 1991) provides:
   (a) At any proceeding concerning an offense under IC 9–30–5, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense:
   (1) at the time of the alleged violation; or
   (2) within the time allowed for testing under section 2 of this chapter [three hours];
   as shown by an analysis of the person's breath, blood, urine, or other bodily substance is admissible.
   (b) If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:
   (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed

for testing under section 2 of this chapter; and
   (2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken;
   the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.
Indiana Code Annotated § 9–30–6–2 (Burns 1991), to which § 9–30–6–15 refers, provides:
   (a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9–30–5, or IC 9–30–9 shall offer the person the opportunity to submit to a chemical test.
   (b) A law enforcement officer:
   (1) is not required to offer a chemical test to an unconscious person; and

I. Whether the numbers on the "evidence ticket" are sufficient evidence that the amount of alcohol in Mullins's blood was greater than ten-hundredths percent by weight.

■ Indiana Code Ann. § 9–30–5–1(a) (Burns 1991) provides that "[a] person who operates a vehicle with at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood commits a Class C misdemeanor." Mullins contends that the "evidence ticket" does not express the test results as a percentage, by weight, of alcohol in the blood, and that therefore the "evidence ticket" is insufficient to establish one of the elements of the offense. We disposed of this argument in *Baran* when we said:

> Pursuant to Indiana Administrative Code tit. 260, r. 1.1–2–1(e)(2), breath test equipment is tested for accuracy using a known ethanol-water or ethanol-gas solution, measured as a percentage of weight by volume. Thus, in order to be properly certified by the Department of Toxicology,

the machines must measure blood alcohol content as a *percentage* of alcohol by *weight* in the blood.

Courts are permitted to take judicial notice of Indiana law. *Hernandez v. State* (1982), Ind., 439 N.E.2d 625, 631. In fact, courts are required to take judicial notice of the regulations concerning breath testing. Ind.Code § 4–22–9–3; *Hatch,* [ (1989) ] 547 N.E.2d [276] at 277. Judicial notice relieves the party having the burden of establishing a particular fact from submitting formal proof of that fact. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 854.

. . . .

[B]ecause the breath test equipment must measure blood alcohol content as a percentage of alcohol by weight in the blood in order to be properly certified by the Department of Toxicology, the trial court was entitled to take judicial notice of the fact that the Intoxilyzer 5000 machine printout expresses the test result as a

(2) may offer a person more than one (1) chemical test under this chapter.
(c) A test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5.
(d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter.

Indiana Code Annotated § 9–30–6–5 (Burns 1991) provides:
(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules under IC 4–22–2 concerning the following:
(1) Standards and regulations for the:
(A) selection;
(B) training; and
(C) certification;
of breath test operators.
(2) Standards and regulations for the:
(A) selection; and
(B) certification;
of breath test equipment and chemicals.
(3) The certification of the proper technique for administering a breath test.
(b) Certificates issued in accordance with rules adopted under subsection (a) shall be sent to the clerk of the circuit court in each county that the breath test operator, equipment, or chemicals are used to administer breath tests. However, failure to send a certificate does not invalidate any test.

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a):
(1) are admissible in a proceeding under this chapter, IC 9–30–5, or IC 9–30–9;
(2) constitute prima facie evidence that the equipment or chemical:
(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy; and
(B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test;
(3) constitute prima facie evidence of the approved technique for administering a breath test; and
(4) constitute prima facie evidence that the breath test operator was certified by the department of toxicology on the date specified on the certificate.
(d) Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this chapter, IC 9–30–5, or IC 9–30–9 if:
(1) the test operator;
(2) the test equipment;
(3) the chemicals used in the test, if any; or
(4) the techniques used in the test;
have not been approved in accordance with the rules adopted under subsection (a).

percentage of alcohol by weight in the blood.

*Baran,* 639 N.E.2d at 647–48 (some citations omitted) (footnotes omitted) (emphasis in the original). The trial court was here, as in *Baran,* entitled to take judicial notice that the BAC Datamaster printout expressed the test result as a percentage of alcohol by weight in the blood. The evidence was therefore sufficient to establish that the percentage by weight of alcohol in Mullins's blood was greater than ten hundredths percent (0.10%).

II. Whether the State laid a sufficient foundation demonstrating what the approved procedures for administering a breath test were and that Trooper Hearon followed those procedures.

█ Mullins argues that because the State offered no evidence of what the approved procedures were for administering a breath test on a BAC Datamaster with a keyboard, the State's case failed as a matter of law. (Brief of Appellant Opposing Transfer at 8). Additionally Mullins argues that the State introduced insufficient evidence that Trooper Hearon followed the prescribed procedures. (Brief of Appellant Opposing Transfer at 6). At trial, Mullins did not object on either of these grounds to the admission of the breath-test results.[5] In order to preserve a claim of trial court error in the admission or exclusion of evidence, it is necessary at trial to state the objection together with the specific

ground or grounds therefor at the time the evidence is first offered. *Harvey v. State* (1989), Ind., 546 N.E.2d 844, 846; *Gradison v. State* (1973), 260 Ind. 688, 706, 300 N.E.2d 67, 80. "Failure to state the specific basis for objection waives the issue on appeal." *Harvey,* 546 N.E.2d at 846. But even on the merits, Mullins is mistaken on both points.

A. Whether the State laid a sufficient foundation demonstrating what the approved procedures for administering a breath test were.

Mullins relies on several cases that say the State must offer some evidence of what the approved procedures for administering a breath test are. In *Klebs v. State* (1974), 159 Ind.App. 180, 305 N.E.2d 781, *trans. denied,* *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), the Court of Appeals concluded that it was error to admit breath-test results when the State had not laid the proper foundation by proof of what the approved procedures for administering breath tests were. The court said:

> We cannot conclude, as a matter of law, that the State sustained its burden in establishing a foundation for admission of the results of the breathalyzer test.... Lieutenant Awe described the technique used to administer the test in response to preliminary voir dire by Klebs' counsel, however the record is devoid of any evidence to establish the procedure described re-

---

**5.** Mullins did object to the introduction of the breath-test results on three grounds. First, he objected that there was insufficient evidence that the breath test was administered within the three hour period provided for in § 9–30–6–2(d). The Court of Appeals has twice said that when a breath test has been administered outside the three hour period, the results of the breath test are still admissible, although the State is deprived of the presumption provided for in § 9–30–6–15(b). *State v. Stamm* (1993), Ind.App., 616 N.E.2d 377, 380 ("Nothing in either Section 2 or Section 15 renders a test taken beyond the three hour time limit inadmissible.... The only effect of the failure to perform the test within the statutory time frame is the State is deprived of the rebuttable presumption in provided in Section 15(b)."); *Tyner v. State* (1987), Ind.App., 503 N.E.2d 444, 449 ("[T]hree hours is, in terms of the admissibility of a chemical test, not a magic time period. Test results which are taken within the three-hour period are not automatically ad-

missible; nor are test results taken after three hours automatically inadmissible."). The trial court overruled Mullins's objection and, in any event, Mullins does not argue the point on appeal.

Mullins also objected at trial to the admission of the breath-test results on the ground that the State had not established that Trooper Hearon had observed Mullins for the twenty-minute period required by Indiana Administrative Code tit. 260, r. 1.1–4–8. Indiana Code § 9–30–6–5(d) states that breath-test results are inadmissible if the approved techniques for administering a breath test have not been followed. Mullins does not argue this point on appeal either.

Finally, Mullins objected at trial to the admission of the breath-test by claiming that it was inadmissible hearsay. Mullins does not argue this on appeal, and in any event, Indiana Code § 9–30–6–15 unequivocally provides for the admissibility of breath-test results, their hearsay character notwithstanding. See Part II. C, *infra.*

sembled the procedure approved by the department of toxicology.

*Id.* 159 Ind.App. at 184, 305 N.E.2d at 783–84.

Similarly, in *Hartman v. State* (1980), Ind. App., 401 N.E.2d 723, *reh'g denied,* the Court of Appeals reversed a conviction for driving while intoxicated. Although at trial the State introduced a video tape of the officer giving the defendant a breath test, the Court of Appeals said, "While the video tape portrays the technique utilized by Collins to administer the test, the record is devoid of any evidence establishing that the procedure utilized resembled the procedure approved by the department. Hence, the test results were inadmissible." *Id.* at 725.

And in *Boothe v. State* (1982), Ind.App., 439 N.E.2d 708, *trans. denied,* the State offered the statement by the officer who had administered the test that the procedures he had followed were those approved by the Department of Toxicology. The Court of Appeals said:

> Boothe argues [that the officer's statement] is an insufficient foundation upon which to base admission of the breathalyzer results. The State must offer a copy of the document setting out the approved procedures for it to be sufficient. Officer Haverstock's statement was a mere assertion he believed the approved procedures were followed. Such statement was insufficient to prove what the approved procedures were. We agree.

*Id.* at 711 (citing *Klebs* ).

But in *Sell v. State* (1986), Ind.App., 496 N.E.2d 799, the Court of Appeals affirmed a conviction for driving while intoxicated where the officer who administered the breath test read the approved procedures into the record. The Court of Appeals said:

> Sell argues ... it was error to admit his breath test results absent admission of a copy of the department of toxicology guidelines for such tests. We do not agree. We note first that, although Ind. Code 9–11–4–5(c)(3) [now Indiana Code § 9–30–6–5(c)(3) ] provides that a certified copy of the department of toxicology guidelines is *prima facie* evidence that the

approved procedure was followed, the statute does not make this the exclusive method of proof. *Grogan v. State* (1985), Ind. App., 482 N.E.2d 300, 306[, *trans. denied* ]. Neither do the cases Sell cites require that a copy of the department guidelines be introduced into evidence. What the cited cases do require is that there be some evidence as to what the approved procedures were. By having the test operator read into the record the applicable procedures from the department guidelines and testify that he followed these procedures, the State has provided such evidence.

*Id.* 496 N.E.2d at 801.

In *Gokey v. State* (1987), Ind.App., 510 N.E.2d 703, the Court of Appeals found no error in the admission of breath-test results where the prosecutor led the officer who administered the test through questions designed to elicit responses that showed the officer followed the approved procedure for administering the test. The Court of Appeals said:

> In *Sell* the officer administering the test read the procedures into the record. Here the State read the procedures into the record in the form of foundational questions. We view the two as equivalent. We find a proper foundation was layed [sic] so as to allow the admission of the breathalyzer test into evidence.
>
> When as here the State lays a foundation for a breath test by repeating the required language from the approved procedures in the form of questions designed to elicit testimony showing compliance with the approved procedures, no error is committed in admitting the test results.

*Id.* at 706.

■ This "evolution" in the Court of Appeals' decisions reached its end in *Hatch v. State* (1989), Ind.App., 547 N.E.2d 276, in which the Court of Appeals pointed out correctly that the State need not present any evidence of what the proper procedures for administering breath tests are since the regulations involved are to be judicially noticed. The *Hatch* court said:

> [Hatch] argues there was a failure of proof because no copy of such regulations [gov-

erning approved test procedures] was offered in evidence. None was necessary. The regulations, adopted pursuant to IC 4–22–9–2, appear at 260 IAC 1.1–1–1 through 1.1–4–5. IC 4–22–9–3 provides that rules so adopted shall be judicially noticed by all courts and agencies of this state. The rules were properly before the court.

*Id.* at 277. This is the position we approved in *Baran. See Baran,* 639 N.E.2d at 646. And we reiterate the point here: the State need not present any evidence of what the approved procedures for administering a breath test are because regulations in the Administrative Code prescribe those procedures and because those regulations are to be judicially noticed.[6] Thus, in this case, as in *Baran* and *Hatch,* the regulation prescribing the proper procedure for administering a breath test using a BAC Datamaster with a keyboard was properly before the court.

    B.   Whether the State laid a sufficient foundation demonstrating that Trooper Hearon followed the approved procedures.

█ Indiana Administrative Code tit. 260, r. 1.1–4–8, sets out the procedure approved under the authority of § 9–30–6–5(a) for administering breath tests with a BAC Datamaster with a keyboard:

The following is the approved method to conduct a B.A.C. DATAMASTER with a keyboard test for alcoholic intoxication:

(1) The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his/her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken.

(2) The green LED on the instrument display must be lighted.

(3) Depress the run switch, enter the password, and insert the record ticket.

(4) Follow the displayed request for information, and enter by the keyboard.

(5) When the PLEASE BLOW appears, place a new mouthpiece in the breath tube, subject must deliver his breath sample. (The beeping signal must become a constant tone, and blowing should continue until the tone stops.)

(6) When the printed record appears and the printer stops, remove the record from the instrument.

(7) If a failure to provide an adequate breath sample was caused by the lack of cooperation by the subject, the operator should record that the test was refused.

The prosecutor conducted the following direct examination of Trooper Hearon:

Q:  Alright, when did you first observe the defendant, do you recall?

A:  It was approximately 11:15, actually when I started my time for the twenty minutes that is required for the test, was when I had the subject in my car, in cuffs, in the back seat. I had also checked his mouth with a flashlight and determined that there was a piece of candy in there. Asked him to spit that out and then started my time limit.

Q:  And did he spit the candy out?

A:  That's right, he did.

Q:  Alright. Uh, do you recall what time the test was administered?

A:  I have to look at the Instrument—the test was actually administered at 2:39—is when the results were obtained.

---

**6.** This was a bench trial, and the trial court was therefore commanded by statute to take judicial notice of the proper procedures as set out by regulation. As we said in *Baran,* however:

Where a jury serves as the factfinder in a criminal case ... the trial court must:
— expressly take judicial notice of the effect of the Administrative Code's standards and regulations for the selection and certification of breath test equipment; and

— instruct the jury "that it may, but is not required to, accept as conclusive any fact judicially noticed."

*Baran,* 639 N.E.2d at 648 (citing Indiana Evidence Rule 201(g)).

However, that the proper procedures were followed may not be judicially noticed. When properly put to laying the foundation for the admission into evidence of breath-test results, the State must show that the proper procedures were followed. See Part II C, *infra.*

Q: O.K. Was the power switch on the "ON" position?

A: Yes.

Q: Alright. Is there a green, what's called an "LED" light? on that machine, and was it on?

A: It was lit up and there is a light, red or green, yes, I do believe it was on.

Q: Did you press the run switch, at that point?

A: Yes.

Q: Did you place a new mouthpiece on the breath tube?

A: Yes.

Q: And did you then ask the Defendant to provide the breath sample?

A: Yes, I did.

Q: And did he, in fact, provide a breath sample?

A: Yes, he did?

Q: And what did you do at that point?

A: Had him blow into the machine.

Q: Does that machine signify when an inadequate sample is, uh ...

A: If you are blowing hard enough, it will give a little, put out a little tone. You blow a continuous period of time, ten or fifteen seconds, and it will stop. At that point in time I tell the subject to stop blowing.

Q: Alright, in fact, did it do that? Did it put out the tone?

A: Yes.

Q: Do you have—this machine prints out a ticket then, once an adequate sample is presented, is that correct?

A: That's right.

Trooper Hearon later testified that he had misspoken and that he began the twenty-minute observation period not at 11:15, but at 2:18.

A comparison of the direct examination with the regulation prescribing the procedures administering the test reveals that the State did show that Trooper Hearon followed the prescribed procedures. Moreover, absent a timely objection by Mullins that Trooper Hearon had not followed a specific part of the procedure, the foundation laid by the State was sufficient to support the trial court's decision to admit the breath-test results.

C. The introduction into evidence of breath-test results in general.

Because we cannot disagree with Mullins that the cases he relies on do seem to suggest that there is an absolute requirement that the State introduce "evidence" meeting the foundational requirements of § 9–30–6–5(d),[7] we take this opportunity to discuss

---

7. Indeed, in two Court of Appeals' decisions, one could easily come to the conclusion that the foundational requirements for the admission of breath-test results are part of what the prosecution must prove beyond a reasonable doubt as part of its case-in-chief. In *Keyes v. State* (1990), Ind.App., 559 N.E.2d 1216, the Court of Appeals said the following in affirming a conviction over a claim that the evidence was insufficient to support the conviction:

> [T]he breath test established that Keyes operated his vehicle with a .13 percent blood alcohol level. The State also established that the administrator of the test was properly certified, that the machine was operating properly, that Keyes was given the test within the requisite time frame, and the proper procedures were followed when the test was administered. This evidence therefore establishes beyond a reasonable doubt that Keyes was guilty of operating a vehicle with a blood alcohol content greater than .10 percent.

*Id.* at 1218 (citations omitted) (emphasis added). And in *State v. Albright* (1993), Ind.App., 622 N.E.2d 995, the Court of Appeals said:

> The State contends that the trial court erred in granting Albright's motion to suppress the results of his breath test. The State had the burden of proof in establishing a foundation for admission of the test results. *Klebs v. State,* 159 Ind.App. 180, 183, 305 N.E.2d 781, 783, *trans. denied, cert. denied,* (1974), 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107; *see also Biggs v. State* (1929), 201 Ind. 200, 167 N.E. 129 (defendant in a criminal action bears no burden of proof).

*Id.* 622 N.E.2d at 997. Normally, the phrase "burden of proof" in a criminal prosecution refers to the burden of producing evidence of substantive guilt with respect to each element of the offense charged.

It is true, of course, that "evidence" the State offers to meet the foundational requirements of § 9–30–6–5(d) may also be substantive evidence of guilt because evidence that makes it more likely that the breath-test results are accurate also makes it more likely, therefore, that a defendant had the blood-alcohol level indicated by the test results. But the use of the foundation required by § 9–30–6–5(d) as the foundation for

what is required of the prosecution and what is required of the defense when the prosecution offers breath-test results for admission as evidence.

■ Generally, if evidence is relevant, it is admissible and should be admitted. *Boots v. Canine* (1884), 94 Ind. 408, 411; *Harbor v. Morgan* (1853), 4 Ind. 158, 159; *McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116, 123; *Indiana State Highway Comm'n v. Vanderbur* (1982), Ind.App., 432 N.E.2d 418, 422, *reh'g denied* (1982), 434 N.E.2d 575, *trans. denied.*[8] Clearly, evidence showing that a defendant's blood-alcohol level was 0.10 percent by weight or greater is relevant to a prosecution under either § 9–30–5–1 or § 9–30–5–2.[9]

■ It is the responsibility of the opponent of evidence to show why relevant evidence is inadmissible. *Williams v. State* (1986), Ind.App., 489 N.E.2d 594, 603 n. 8; *Hughes v. State* (1985), Ind.App., 481 N.E.2d 135, 138. Breath-test results as shown by a printout are hearsay—an out-of-court statement offered to prove the truth of the matter asserted by the statement. Hearsay is generally inadmissible. But not until the defense objects to the admission of breath-test results on this ground, as it did in this case, does the responsibility shift to the prosecution to fit the breath-test results into a judicially or statutorily created exception to the general prohibition against the admission of hearsay. *Banks v. State* (1991), Ind., 567 N.E.2d 1126, 1129; *Boarman v. State* (1987), Ind., 509 N.E.2d 177, 181; *Smith v. State* (1983), Ind., 443 N.E.2d 1187, 1190; *Jethroe v. State* (1975), 262 Ind. 505, 510, 319 N.E.2d

133, 137. Section 9–30–6–15(a) creates, in fact, just such an exception, making breath-test results admissible in prosecutions under § 9–30–5.

■ Similarly, with respect to the foundation required for the admission of breath-test results, before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 294, *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773 (1988); *Boarman*, 509 N.E.2d at 181; *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095; *Smith v. State* (1985), Ind., 475 N.E.2d 1139, 1142; *Bridges v. State* (1983), Ind., 457 N.E.2d 207, 210.

■ Once the prosecution has responded to a timely objection to the admission of breath-test results, if the defense perceives that the prosecution has still not established a proper foundation, it may not stand on its first objection, but must object again, stating what part of the required foundation the prosecution has failed to establish. *Boarman*, 509 N.E.2d at 181. As the Court of Appeals said in *Hughes v. State* (1985), Ind. App., 481 N.E.2d 135:

> [A] defendant may not sit idly by while error is committed and later take advantage of it, where a proper objection made at trial could have corrected the error.... Had objection been made to the lack of a proper foundation in this case, such foundation could then have been supplied.

---

the admission of breath-test results should not be confused with its use as substantive evidence of guilt. The foundational elements of § 9–30–6–5(d) are *not* elements of the offense defined by § 9–30–5–1.

8. *See now* Ind.Evidence Rule 402 ("All relevant evidence is admissible, except as otherwise provided by the United States or Indiana constitutions, by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible.") (Adopted effective January 1, 1994).

9. The relevance of such test results to a prosecution for operating a vehicle with a blood-alcohol level of .10% or greater by weight is obvious. Breath-test results in a prosecution for operating

a vehicle while intoxicated under § 9–30–5–2 are also obviously relevant, but are especially relevant in light of § 9–13–2–131 (Burns 1991), which provides: " 'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood." *But see Warner v. State* (1986), Ind.App., 497 N.E.2d 259 (in order to sustain a conviction under § 9–11–2–2, the predecessor statute to § 9–30–5–2, in addition to proof of a blood-alcohol level of 0.10 percent or greater, the State must also offer evidence of actual impairment), *questioned by Clark v. State* (1987), Ind.App., 512 N.E.2d 223, 228 n. 1.

*Id.* at 138.[10]

This rule requiring the defense to object *each time* it perceives that the prosecution has failed to lay the proper foundation for the admission of breath-test results is by no means new. The cases we have cited demonstrate as much. We take the opportunity to repeat it here, however, both to reaffirm "the policy favoring speedy correction of prejudicial errors," *Winston v. State* (1975), 165 Ind.App. 369, 376, 332 N.E.2d 229, 233, *trans. denied,* and to avoid any future confusion on the subject.

### III. Whether the breath-test machine used to test Mullins was properly certified.

■ Mullins next claims that the breath-test machine used to test him had not been certified by the Director of Toxicology within the 180 days before he was tested. The State offered into evidence a certificate signed by the Director of Toxicology certifying the approval of the machine used to test Mullins. As Mullins points out, the State's exhibit listed eleven breath-test machines that the Director was certifying by his signature on the document. Next to each machine's serial number was the date on which that machine had been inspected. The certificate itself was not dated, and the date on which the last machine listed was inspected was January 27th, 1992. Mullins was tested on January 21st. It is therefore obvious that the Director's certification of the machine used to test Mullins came only after Mullins had been tested. Mullins claims this made the breath-test results in his case inadmissible under § 9–30–6–5(d)(4), which requires that test equipment have been approved in accordance with rules adopted by the Director of Toxicology under § 9–30–6–5(a).

Under § 9–30–6–5(c), a certified copy of a certificate from the Director constitutes "prima facie evidence that the equipment ... was inspected and *approved* by the department of toxicology on the date specified on the certificate copy...." (Emphasis added). It is clear that what § 9–30–6–5(d) requires is that the test machine have been *approved* by the department. It is clear from § 9–30–6–5(c) that the act of certification is distinct from the act of approval and that approval occurs when a machine passes an inspection while certification comes only later. The machine used to test Mullins was *approved* on January 18th. The certificate offered by the State was prima facie evidence that the machine used to test Mullins had been approved by the department of toxicology, and that is all § 9–30–6–5(d) requires. There was no error on this basis in admitting the breath-test results.

### IV. Whether the State laid a sufficient foundation showing that the breath-test machine used to test Mullins was working properly.

Mullins final argument is that although § 9–30–6–5(c)(2)(B) says that a certificate from the Department of Toxicology is prima facie evidence that the test machine was "in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test," there was evidence here that the machine used to test Mullins was not, in fact, in proper working condition on January 21st, the day Mullins was tested, and that that evidence was sufficient "to rebut the presumption" that machine was in proper working condition. Once the "presumption" had been rebutted, we understand Mullins to claim, the State should have been required to

---

**10.** *See also Williams,* 489 N.E.2d at 603 n. 8., where the Court of Appeals said, "The requirement that the defendant show the proffered evidence is substantively inadmissible and excludable is akin to 'invited error.' ... [T]he defendant's omission contributes to the State's oversight in failing to lay a proper foundation at a time when the oversight could be corrected," and *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229, *trans. denied,* in which the Court of Appeals said:

> [S]ince only the interested party himself can really know whether the introduction or exclusion of a particular piece of evidence is in his own best interests ... adherence to the proper objection requirement in the realm of evidentiary issues is both necessary and reasonable to insure that "the administration of the exclusionary rules of evidence is ... *fair* and *workable*." McCormick, *Evidence* § 18 (2d Ed.1972) (emphasis supplied).

*Id.* at 376, 332 N.E.2d at 233 (some citations omitted).

come forward with more evidence to show that the machine was in proper working condition on January 21st.

The evidence that the machine used to test Mullins was not working properly on January 21st was the following. The machine used to test Mullins had been placed into service at the Speedway police department on January 18th to replace a machine that was having electrical problems. It was inspected and approved at that time. Sometime during the day of January 21st—after Mullins had been tested—some problem with the machine used to test Mullins was detected, a voltage regulator/line stabilizer was placed in line between the machine and the wall socket, and the machine was reinspected and reapproved.

The certificate offered by the State was prima facie evidence [11] that the machine was working properly when it was used to test Mullins; Mullins claims that the history of troubles at the Speedway police department was sufficient to "rebut the presumption" created by the certificate. Mullins misunderstands the meaning of "prima facie evidence" in this context. While there are some older cases that say "prima facie evidence" creates a presumption that disappears once contradicted by credible, opposing evidence,[12] we can find no recent cases to support the proposition and believe that that meaning in this context is obsolete.[13]

We addressed what "prima facie evidence" means in *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532, in which we said, " 'Prima facie' means such evidence as is sufficient to establish a given fact and which will remain sufficient if uncontradicted." *Id.* at 651, 283 N.E.2d at 534 (citations omitted).[14] The question here is what is the effect when prima facie evidence of a fact is contradicted. More recent cases say that contradiction of prima facie evidence merely creates a question for the trier of fact. *E.g., Harris v. State* (1981), Ind., 425 N.E.2d 112, 116 ("The state presented sufficient evidence to make out a prima facie case and any conflicts in the testimony were for the triers of fact to resolve."); *Walton v. State* (1980), 272 Ind. 398, 400, 398 N.E.2d 667, 669 ("When the guilt of the defendant can be found, beyond a reasonable doubt, from the evidence presented and the reasonable inferences to be drawn therefrom, a prima facie case has been made, and the trier of fact is not required to accept the defendant's evidence as true." (Citations omitted).); *Hinds v. McNair* (1955), 235 Ind. 34, 54, 129 N.E.2d 553, 564, *reh'g denied* ("Assuming appellants made out a prima fa-

**11.** In 1969 we eliminated the term "prima facie" from our Trial Rules, and our discussion here of "prima facie evidence" is limited to construing the term's meaning in the statutes that use it.

**12.** *E.g., Gandy v. Orr* (1942), 112 Ind.App. 605, 611, 44 N.E.2d 181, 183 (en banc), *trans. denied:*

"Certificates * * * purporting to be under seal and signature of such notary public, shall be received as presumptive evidence of the official character of such instrument and of the facts therein set forth." . . . This certificate, authenticated by the notary, was *prima facie* evidence of the execution of the contract. *Krom et al. v. Vermillion*, 1895, 143 Ind. 75, 41 N.E. 539. The certificate being merely presumptive evidence, the presumption disappears upon evidence to the contrary. *State ex rel. Winslow v. Fisher*, 1941, 109 Ind.App. 644, 37 N.E.(2d) 280. But until this presumption is rebutted it stands in favor of one having the burden of proof on the question of execution.

**13.** *See* now Indiana Evidence Rule 301, adopted effective January 1, 1994:

*Presumptions in Civil Actions and Proceedings.*

In all civil actions and proceedings not otherwise provided for by constitution, statute, judicial decision or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on the party on whom it was originally cast. *A presumption shall have continuing effect even though contrary evidence is received.*
(Emphasis added).

**14.** *See also Jones v. Cary* (1941), 219 Ind. 268, 284, 37 N.E.2d 944, 951 ("While the violation of such a statutory [traffic] regulation does not conclusively establish negligence, it is prima facie evidence of negligence and places on the opposing party the duty of producing evidence to show a valid excuse for such violation."); *Floyd v. Jay County Rural Elec. Membership Corp.* (1980), Ind.App., 405 N.E.2d 630, 633, *reh'g denied* ("Prima facie does not mean conclusive. Definitions of the term imply that such evidence may be contradicted.") (citing *Johnson* and *Rene's Restaurant Corp. v. Fro–Du–Co Corp.* (1965), 137 Ind.App. 559, 210 N.E.2d 385).

cie case, it is overcome as soon as opposing evidence is produced to the satisfaction of the triers of the facts."); *Hughes v. State* (1985), Ind.App., 481 N.E.2d 135, 137 ("What evidence is sufficient to explain or refute the prima facie case is addressed to the decision of the trier.... A prima facie case was established. Whether the fact that Hughes passed the dexterity test rebutted the prima facie case was for the determination of the trier of fact." (Citing *Sebasty v. Pershke* (1980), Ind.App. 404 N.E.2d 1200, *trans. denied*).).

In one case, the Court of Appeals addressed the precise problem presented here:

The statute plainly states the certificate issued by the department is admissible as evidence and constitutes prima facie evidence of proper inspection and approval. After prima facie evidence of proper inspection and approval, the State need not do more in that regard. Defendant could introduce evidence that the equipment had not been properly inspected. The issue would then be one for resolution by the trier of fact.

*Denman v. State* (1982), Ind.App., 432 N.E.2d 426, 429, *trans. denied* (decided under Indiana Code § 9–4–4.5–6, the predecessor of the current § 9–30–6–5).

Thus, once the State had introduced prima facie evidence that the machine was in proper working condition, the burden of production shifted to Mullins to rebut the State's prima facie showing. *Norris Automotive Serv. v. Melton* (1988), Ind.App., 526 N.E.2d 1023, 1025 ("When evidence is presented showing a bailee received property in good condition, but it was damaged prior to being returned to the bailor, an inference is raised the bailee was negligent. This inference establishes a *prima facie* case for the bailor and shifts the burden of production to the bailee." (Citations omitted)); *Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 58, *trans. denied* ("The burden of production is said to shift when the party who initially has the burden brings forth enough evidence that a reasonable trier of fact could find in that party's favor." (Citations omitted)); *In re Willey's Trust* (1982), Ind.App., 433 N.E.2d 1191, 1193 ("[T]he gen-

eral rule [that the trustee bears the burden of proving the propriety of items in a trust account] is subject to modification when a trustee files specific accounts and make [sic] a prima facie showing that the accounts are proper. Once the trustee satisfies his burden of proof, the burden of persuasion shifts to the beneficiaries to produce contradictory evidence...." (Citations omitted)). Mullins attempted to rebut the State's showing by pointing out to the trial court the electrical problems apparent from the inspection records. The trial court was unpersuaded and found no barrier to the admission into evidence of the breath-test results.

We disagree with the Court of Appeals in *Denman* to the extent that the *preliminary* question of whether the foundation established by the State was sufficient to admit Mullins's breath-test results was for the trial court and not for the trier of fact to determine. When a trial court has made a ruling concerning the sufficiency of the foundation laid to justify the admission of evidence, appellate courts review that decision for an abuse of discretion. *Daum v. State* (1993), Ind.App., 625 N.E.2d 1296, 1297, *trans. denied; State v. Petry* (1988), Ind. App., 524 N.E.2d 1293, 1296 (rulings on the admissibility of evidence under Indiana Code § 35–37–4–6, which relates to the admissibility of pre-trial statements and videotaped statements by protected persons). Inasmuch as the State offered the statutory prima facie evidence that the breath-test machine used to test Mullins was working properly when Mullins was tested, we cannot conclude from this record that that the trial court abused its discretion in admitting the breath-test results.

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, and affirm the conviction entered by the trial court. App.R. 11(B)(3). We remand for re-sentencing, however, because the trial court sentenced Mullins to a suspended term of 180 days for a Class C misdemeanor, the maximum allowable sentence for which is 60 days. Ind.Code § 35–50–30–4 (1993).

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result.