# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Joas & Stotts
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF E.P. III (Minor Child) and | ) ) ) ) | |
| E.P. JR. (Father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 15A04-1403-JT-134 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

**FILED**
Nov 18 2014, 10:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1303-JT-5

**November 18, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

E.P. Jr. ("Father") pled guilty to Class B felony child molesting and Class B felony neglect of a dependent in 2013. S.H., the victim, is the half-sibling of E.P. III ("E.P."), Father's son. Father was sentenced to twenty years in the Department of Correction; he is scheduled to be released in 2029. Shortly after pleading guilty, Father's parental rights to E.P. were terminated. Father now appeals, arguing that the termination order should be reversed because the same judge, the Honorable James D. Humphrey, presided over his termination and criminal cases in violation of Indiana Code section 31-32-8-2. He also contends that there is insufficient evidence to support the termination order.

We conclude that Father's claim regarding Judge Humphrey implicates procedural error, and because he failed to object at any time to Judge Humphrey presiding over both the termination and criminal matters, he has waived any claim of error in that context. We also conclude that there is sufficient evidence to support the trial court's order terminating Father's parental rights. We therefore affirm.

**Facts and Procedural History**

Father is the biological father of E.P., born August 23, 2011. E.P.'s half-sister, S.H., was born in 2008.[1] Both children were removed from the care of Father and A.H. ("Mother")[2] in November 2011 after the Dearborn County Department of Child Services

---

[1] Because S.H. is not Father's child, she is not at issue in this appeal. We discuss her welfare where it is relevant to these proceedings.

[2] The trial court terminated Mother's parental rights, and she does not participate in this appeal.

("DCDCS") learned that S.H. had been treated at the local hospital for severe burns to her genital area and buttocks. Neither parent could explain how S.H. had been burned.

DCDCS filed a petition alleging that E.P. and S.H. were children in need of services ("CHINS"), and in March 2012, Mother and Father admitted that both children were CHINS. Both parents were ordered to do a number of things to facilitate reunification with the children, including participate in services. Neither parent made any discernible progress toward reunification, however: Father was incarcerated shortly after the CHINS adjudication for battering Mother,[3] and upon his release a month later, both parents were arrested and charged with molesting and neglecting S.H. The charges against Mother and Father stemmed from the burns S.H. suffered in 2011.

Mother and Father ultimately pled guilty to Class B felony child molesting and Class B felony neglect of a dependent. At the guilty-plea hearing, Father admitted the truth of the allegations against him. *See* Appellant's App. p. 295 (Trial Court: "Sir, do you understand that by pleading guilty that you're going to be . . . admitting that you committed the crime you're charged with?" Father: "Yes your honor."); 310 ("Trial Court: Those allegations presented by the prosecutor today, are those allegations true?" Father: "Yes your honor."). The trial court, the Honorable James D. Humphrey, sentenced Father to twenty years; he is scheduled to be released in 2029.[4] Father is a credit-restricted felon.

---

[3] Father later pled guilty to domestic battery.
[4] The trial court also sentenced Mother to twenty years; she is scheduled to be released in 2029. Mother, like Father, is a credit-restricted felon.

Five months later DCDCS filed an amended petition to terminate Mother's and Father's parental rights, and in early 2014, Judge Humphrey, who was also assigned to the parents' termination case, held a hearing on the petition.[5] At the beginning of the hearing, Judge Humphrey informed counsel that he was familiar with the parents' criminal cases and their guilty pleas to child molesting and neglect. Tr. p. 9 ("I'm familiar with [the criminal] cases and I believe both of your clients entered a plea of guilty on those offenses."). At no point did any party object to Judge Humphrey presiding over the termination case.

DCDCS caseworkers proceeded to testify that E.P., who was only a few months old when he was removed from his parents' care years earlier, was thriving in his foster-care placement. Family Case Manager Steven Crusz ("FCM Crusz") testified that termination of Father's rights was in E.P.'s best interests because he was doing so well in foster care. *Id.* at 23. Alex Parniuk, the guardian ad litem ("GAL") assigned to the case, opined that Father's rights should be terminated because Father would not be available to parent E.P. any time in the near future. *Id.* at 42.

Father also testified at the hearing. When asked about his participation in services before his incarceration, Father admitted that he had only been partially compliant. *Id.* at 55-57. Nonetheless, he told the court that he loved E.P., had been sending him letters from prison, and if he "got out of jail, somehow[,] someway," he would participate in services to try to regain custody of E.P. *Id.* at 58, 59. Father also denied molesting or neglecting S.H., saying that he wanted to withdraw his guilty plea and go to trial, "but

---

[5] DCDCS had filed a previous termination petition in 2013.

4

that's not in the court's system." *Id.* at 53. Father proclaimed that he "never once said I did anything wrong, even except [sic] I took a plea," and only pled guilty because he "was going to get found guilty [sic] no matter what" and did not want S.H. "to have to go through [the legal proceedings] no more." *Id.* at 59, 63. Yet Father later stated that "if [S.H.] said something happened, then I guess something may have happened . . . I'm sorry for that."[6] *Id.* at 64.

The trial court took the matter under advisement. In February 2014 the court entered its order terminating both parents' parental rights, concluding, in relevant part:

> There is a reasonable probability that:
>
>> The conditions which resulted in [E.P.'s] removal and continued placement outside the home will not be remedied as shown by:
>>
>>> [F]ather's conviction of Child Molest[ing] and Neglect of a Dependent as to victim S.H., who is a sibling to the child herein, [E.P.];
>>>
>>> Both parents' sentence of twenty (20) years' incarceration with the Indiana Department of Correction as credit restricted felons;
>>>
>>> *\*\*\*\*\**
>>>
>>> Father's inability to process the damage he has done and lack of remorse.
>>
>> The continuation of the parent-child relationship poses a threat to [E.P.'s] well-being as shown by:
>>
>>> [F]ather's conviction of Child Molest[ing] and Neglect of a Dependent to the victim, S.H., a sibling to a child herein, [E.P.];
>>>
>>> The horrendous nature of the injury to the child [S.H.];

---

[6] In light of Father's conflicting statements, the court indicated that it would take judicial notice of Father's statements at his guilty-plea hearing. Tr. p. 64. There were no objections, and Father does not take issue with the court's action on appeal.

5

Termination of parental rights is in [E.P.'s] best interests.

There is a satisfactory plan for the care and treatment of [E.P.], that being adoption.

Appellant's App. p. 247-48 (formatting altered).

Father now appeals.

## Discussion and Decision

Father contends that the termination order should be reversed because the same judge, Judge Humphrey, presided over his termination and criminal cases in violation of Indiana Code section 31-32-8-2. He also argues that there is insufficient evidence to support the trial court's order terminating his parental rights.

## I. Change of Judge

Father argues that Judge Humphrey "violated Ind[iana Code section] 31-32-8-2" by presiding over his termination and criminal proceedings, and he asks us to reverse the termination of his parental rights and remand this case for a new hearing before a new judge. Appellant's Br. p. 14. Section 31-32-8-2 provides that "the judge who presided over the trial at which an individual was convicted of an offense listed in IC 31-35-3-4[7] may not be the judge who presides over the proceedings in an action filed under IC 31-35-3 with respect to that individual." The State responds that Section 31-32-8-2 is a procedural statute and Father has waived his argument by failing to object at trial. To the extent the State suggests that Father has waived his claim because Section 31-32-8-2 does not implicate jurisdiction, we agree.

---

[7] Child molesting is one offense listed in Section 31-35-3-4.

When a trial court renders a decision in a case that it has not been granted the power to decide, a true jurisdictional problem arises. For example, a real jurisdictional problem exists when a small-claims court rules on a delinquency case. *K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006). But here, there is no dispute that Judge Humphrey, sitting in Dearborn Circuit Court, had the authority to hear Father's termination-of-parental-rights case. *See* Ind. Code § 33-28-1-2 ("All circuit courts have . . . original and concurrent jurisdiction in all civil cases and in all criminal cases[.]"). Thus, Judge Humphrey had jurisdiction to consider DCDCS's petition to terminate Father's parental rights.

Father's claim—which is, essentially, that he was entitled to a change of judge—implicates procedural or legal error, not jurisdiction. *See Johnson Cnty. Rural Elec. Membership Corp. v. S. Cent. Ind. Rural Elec. Membership Corp.*, 883 N.E.2d 141, 145 (Ind. Ct. App. 2008) ("[The appellant's] claim of error in the denial of its change of judge motion is one of ordinary legal error, not lack of jurisdiction . . . ."); *see also K.S.,* 849 N.E.2d at 541 ("[A]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction."). Importantly, non-jurisdictional procedural errors may be waived if they are not raised at the appropriate time. *See Johnson Cnty.*, 883 N.E.2d at 145 (citing *Packard v. Shoopman*, 852 N.E.2d 927, 930 (Ind. 2006)). That is what happened here: at the beginning of the termination hearing, Judge Humphrey reminded the parties that he had presided over the parents' criminal cases, yet Father never objected to Judge

7

Humphrey also presiding over his termination case. Instead, Father raised the issue for the first time on appeal. Father has therefore waived his claim of error. *See Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012) (an appellant who raises an issue for the first time on appeal waives the issue), *trans. denied*.[8]

## II. Termination of Parental Rights

Father also argues that there is insufficient evidence to support the trial court's order terminating his parental rights.

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

---

[8] Father does not raise any fundamental-error claim with respect to Judge Humphrey presiding over the termination and criminal matters. *See* Appellant's Br. p. 14.

8

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.* (citation omitted). "Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

    (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted). On appeal, Father challenges the sufficiency of the evidence supporting the trial court's judgment as to subsection (B) of the termination statute. *See* Appellant's Br. p. 10-11 ("Father is challenging the [] court's ruling that there is a reasonable probability that the conditions that resulted in [E.P.'s] removal will not be remedied and that continuation of the parent-child relationship poses a threat to E.P.'s [] well-being.").

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCDCS was required to establish, by clear and convincing evidence, only one of the three requirements of subsection (B). Because we find it to be dispositive, we discuss only whether there is a reasonable probability that the conditions that resulted in E.P.'s removal or the reasons for his placement outside Father's home will be remedied.

A showing that Father has been convicted of an offense listed in Indiana Code section 31-35-3-4(1) is prima facie evidence that "the conditions that resulted in the

10

removal of the child from the parent under a court order will not be remedied." *See* Ind. Code § 31-35-3-8(1). Child molesting is one such listed offense. *See* Ind. Code § 31-35-3-4(1)(G). "'Prima facie' means such evidence as is sufficient to establish a given fact and which will remain sufficient if uncontradicted." *Earl v. Am. States Preferred Ins. Co.*, 744 N.E.2d 1025, 1028 (Ind. Ct. App. 2001) (citing *Mullins v. State*, 646 N.E.2d 40, 50 (Ind. 1995)). The contradiction of prima facie evidence merely creates a question for the trier of fact. *Mullins*, 646 N.E.2d at 50 (citation omitted). At the termination hearing, DCDCS introduced evidence of Father's conviction for molesting E.P.'s half-sibling S.H. Father did not object to the introduction of this evidence.

On appeal, however, Father argues that he "contradicted this prima facie evidence by protesting his innocence at the fact-finding hearing . . . ." Appellant's Br. p. 13. He continues:

> Father indicated [at the termination hearing] that the only reason he pled guilty was to spare S.H. from having to go through trial. Father testified that he attempted to withdraw his guilty plea because he wanted to take his case to trial. Because the court would not let Father withdraw his plea, he voiced his intention to file for post-conviction relief to have his guilty plea overturned.

*Id.*

We are not convinced that Father's claims at the termination hearing contradicted the prima facie evidence presented by DCDCS. Although Father protested his innocence, he also stated that "if [S.H.] said something happened, then I guess something may have happened . . . I'm sorry for that." Tr. p. 64. Thus, even if Father contradicted DCDCS's prima facie evidence by initially claiming his innocence, he muddied the waters when he later apologized for "something" happening to S.H. To the extent Father created a

11

question of fact regarding the continuation of the parent-child relationship posing a threat to E.P.'s well-being, the trial court resolved that question in DCDCS's favor. We find no error in that regard.

Moreover, the other evidence presented by DCDCS clearly supports the trial court's conclusion that there is a reasonable probability that the conditions that resulted in E.P.'s removal or the reasons for his placement outside Father's home will not be remedied. In making this determination, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (citation omitted). Courts may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244 (Ind. Ct. App. 2002), *trans. denied.* Parents who "pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *C.T. v. Marion Cnty. Dep't of Child Servs.*, 896 N.E.2d 571, 585 (Ind. Ct. App. 2008) (citation omitted).

Here, the trial court heard evidence that Father was only partially compliant with services before he was incarcerated—first for battering Mother and later for molesting and neglecting S.H. And as DCDCS caseworkers pointed out, Father will be unavailable to parent E.P. until at least 2029 due to his molestation and neglect convictions. By then, E.P. will be an adult. In light of all the evidence presented, we conclude that the trial

court properly determined that there was a reasonable probability that the conditions resulting in E.P.'s removal or the reasons for his placement outside Father's home would not be remedied.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.