# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2018, 7:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency – Appellate Division

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
CHILD ADVOCATES, INC.

DeDe K. Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re M.F., a Child Alleged to Be in Need of Services,<br><br>B.R. (Father),<br><br>*Appellant-Respondent,*<br><br>v. | December 20, 2018<br><br>Court of Appeals Case No. 18A-JC-1585<br><br>Appeal from the Marion Superior Court, Juvenile Division<br><br>The Honorable Gary K. Chavers, Judge Pro Tempore<br><br>The Honorable Jennifer J. Hubartt, Magistrate |

| | |
|---|---|
| Indiana Department of Child Services,<br>*Appellee-Petitioner,*<br><br>and Child Advocates, Inc.,<br>*Appellee-Guardian Ad Litem.* | Trial Court Cause No.<br>49D09- 1606-JC-1881 |

**Mathias, Judge.**

[1] B.R. ("Father") appeals the order of the Marion Superior Court determining that his minor child, M.F. ("Daughter"), is a child in need of services ("CHINS"). On appeal, Father presents two issues for our review, which we restate as: (1) whether the trial court's CHINS determination is supported by sufficient evidence, and (2) whether the trial court's dispositional order is inadequate.

[2] We affirm.

## Facts and Procedural History

[3] Daughter was born to J.F. ("Mother") on May 15, 2016. At the time of the birth, both Mother and Daughter tested positive for marijuana and opiates. Mother also demonstrated an inability to properly care for the infant. The Indiana Department of Child Services ("DCS") began an investigation into the matter.

[4] On June 2, 2016, DCS filed a petition alleging that Daughter was in need of services. Mother informed DCS that she did not know with certainty who was Daughter's biological father, but she indicated that D.C., a man with whom she had another child, was possibly the father. DCS then filed an amended petition naming D.C. as a potential father. However, subsequent DNA testing indicated with absolute certainty that D.C. was not Daughter's biological father.

[5] On October 12, 2016, the trial court entered an order finding Daughter to be a CHINS. At this time, Mother informed DCS that Father was potentially Daughter's biological father. Accordingly, on October 14, 2016, DCS filed an amended CHINS petition naming Father. Appellant's App. Vol. II, pp. 92–97. Father did not respond, and the trial court found that Father's whereabouts were then unknown. DCS moved for a default judgment.

[6] On December 9, 2016, DCS filed an Affidavit of Diligent Inquiry, which indicated that Mother "last heard [Father] was in Prison" but had no other "information concerning [Father]." Appellant's App. Vol II, p. 103. On December 13, 2016, the trial court clerk issued a Summons for Service by Publication and Notice of the CHINS Hearing, having been unable to locate Father. On January 18, 2017, the court noted that DCS had had no contact with Father and that a hearing for default was set for March 3, 2017.

[7] On March 3, 2017, the trial court held a hearing regarding DCS's request for default judgment against Father. The trial court found that DCS had made reasonable efforts to locate Father and entered an order of default against

Father, affirming Daughter's status as a CHINS. The trial court proceeded to disposition, ordering no services to Father due to his unknown whereabouts.

[8] In a May 2017 progress report to the court, DCS noted that Father's location was still unknown at that time. Additionally, DCS reported that Mother had not completed the court-ordered services, that she had missed forty random drug screens, and that her last drug screen from January 2017 was positive for marijuana, opiates, and benzodiazepines. DCS also noted that Daughter had been placed with her maternal aunt "where she [was] able to maintain family bonding." Appellant's App. Vol. II at 137. In its subsequent report in August of that year, DCS requested the trial court's permission to change the permanency plan to adoption, noting that the maternal aunt had hired an adoption attorney and wanted to adopt Daughter.

[9] In a permanency order dated September 6, 2017, the trial court changed the permanency plan to adoption, noting Mother's continued lack of progress and Father's unknown whereabouts. On September 18, 2017, DCS filed a petition to terminate both parents' parental rights.

[10] Shortly thereafter, DCS was able to locate Father as an inmate at the Branchville Correctional Facility. The trial court appointed counsel to represent

Father, and Father filed a request for DNA paternity testing. The results of the DNA test indicated with certainty that Father is Daughter's biological father.[1]

[11] On February 12, 2018, Father filed a motion for relief from judgment regarding the trial court's March 3, 2017 default judgment order, alleging that he was incarcerated at the time DCS conducted its "diligent" inquiry and should have been able to locate Father. The trial court granted this motion and also granted DCS's subsequent motion to dismiss the petition to terminate Father's parental rights.

[12] On May 9, 2018, the trial court held an evidentiary hearing regarding Daughter's status as a CHINS with regard to Father. That same day, the trial court entered an order adjudicating Daughter to be in need of services, finding in relevant part:

> 22. [Daughter] is in pre-adoptive relative care with her maternal aunt and uncle.
>
> 23. [Father] is incarcerated at the Branchville Correctional Facility due to convictions involving Burglary with a Deadly Weapon, Robbery, Criminal Confinement, and Theft.
>
> 24. [Father] has participated in a number of rehabilitative programs while incarcerated[,] and he hopes his participation will lead to an early release from incarceration.

---

[1] Specifically, the probability that Father is Daughter's biological father is 99.999996 percent.

25. [Father]'s earliest release date is currently in 2023.[2]

26. [Father] is unable to have the child placed in his care at this time.

27. [Father] is unable to provide for the child's basic needs at this time due to his incarceration.

28. [Father] is unable to provide the child with a safe and stable home environment due to his incarceration.

29. [Father] is unable to provide the child with parental supervision due to his incarceration.

Appellant's App. Vol. III, p. 27–28. On June 13, 2018, the trial court held a dispositional hearing and entered a dispositional order. Father now appeals.

## The CHINS Statutes and Our Standard of Review

[13] As explained by our supreme court, Indiana Code sections 31-34-1-1 through 31-34-1-11 specify the elements that DCS must prove in order to establish that a child is in need of services: (1) the child is under the age of eighteen; (2) one or more particular set or sets of circumstances set forth in the statute exists; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (citing *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)).

---

[2] The Department of Correction's Offender Locator now indicates that Father's earliest release date is in November 2022. But at the time of the CHINS proceedings before the trial court, it was in 2023.

[14]    In this case, DCS alleged that Daughter was in need of services under Indiana Code sections 31-34-1-1 and 31-34-1-10. The former section provides that a child is a CHINS if, before the child becomes eighteen years of age:

> (1)  the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2)  the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B)  is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1. The latter section provides:

> Except as provided in sections 12 and 13 of this chapter, a child is a child in need of services if:
>
> (1)  the child is born with:
>
> > (A) fetal alcohol syndrome;
> >
> > (B)  neonatal abstinence syndrome; or
> >
> > (C) any amount, including a trace amount, of a controlled substance, a legend drug, or a metabolite of a controlled substance or legend drug in the child's body, including the child's blood, urine, umbilical cord tissue, or meconium; and
>
> (2)  the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; or
> >
> > (B)  is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-10.

[T]he purpose of a CHINS adjudication is to protect children, not punish parents. *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015), *trans. denied* (citing *N.E.*, 919 N.E.2d at 106). A CHINS adjudication is not a determination of parental fault but is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention. *Id.* (citing *N.E.*, 919 N.E.2d at 105). Because CHINS proceedings are civil in nature, DCS must prove that a child is a CHINS as defined by the relevant statutes only by a preponderance of the evidence. *Id.*

"Unlike CHINS dispositional decrees, no statute expressly requires formal findings in a CHINS fact-finding order[.]" *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014) (citing Ind. Code § 31-34-19-10). Here, the trial court entered findings of fact and conclusions of law in its fact-finding order, but Father does not challenge the veracity of any of the court's factual findings. The failure to challenge findings by the trial court results in waiver of any argument that the findings are clearly erroneous. *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied*. If a party fails to challenge the trial court's factual findings, we will accept them as true. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997).

On appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *B.R.*, 875 N.E.2d at 372. Instead, we consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom.

*Id.* We reverse only upon a showing that the trial court's decision was clearly erroneous. *Id.* at 373.

# I. DCS Presented Sufficient Evidence to Support the Trial Court's CHINS Determination

[18] Father first claims that DCS presented no evidence to show that Daughter's physical or mental condition was seriously impaired or endangered as a result of Father's inability, refusal, or neglect to provide food, clothing, shelter, medical care, education, or supervision, as required by Indiana Code section 31-34-1-1(1). Father focuses first on the requirement that DCS prove that Daughter's physical or mental condition was "seriously impaired" or "seriously endangered," arguing that no such evidence was presented. We disagree.

[19] The evidence favoring the trial court's decision shows that Father is currently incarcerated. Moreover, there was evidence that his earliest possible release date was not until 2023. In fact, at the time of the CHINS hearings, both Mother and Father were incarcerated. As noted by the State, it appears that Daughter would be homeless but for foster care. It is obvious that Father is not able to provide the necessities of life for Daughter. Thus, the trial court did not clearly err in determining that Daughter's physical or mental condition was seriously impaired.

[20] Father also argues that there was no evidence that Daughter needed care, treatment, or rehabilitation that she was not already receiving at the time of the CHINS hearing. He appears to argue that Daughter is not a CHINS because

she is being adequately cared for in foster care with her maternal aunt. However, this argument overlooks the fact that the only reason Daughter is being well cared for in foster care is itself a result of the CHINS proceedings.

[21] Father also contends that, "in the absence of any recommendations for care, treatment or rehabilitation, and with his daughter placed in the care of a relative, it is difficult to say why coercive intervention of the court would be required[.]" Appellant's Br. at 16. Again, this overlooks the fact that the very reason Daughter is in foster care is that DCS intervened because of Father's inability to care for his child due to his incarceration. In other words, Daughter is receiving services, i.e. foster care, because of Father's inability to care for her himself. The fact that the foster care is adequate to care for Daughter is not evidence that she is not in need of services; it is the *result* of the fact that she is in need of services.

[22] Accordingly, the trial court did not clearly err in determining that Daughter's physical or mental condition was seriously impaired or endangered by Father's inability, due to his incarceration, to supply her with the necessary food, clothing, shelter, medical care, education, or supervision, and that Daughter needs care that she was not receiving and was unlikely to be provided without the intervention of the court, i.e., foster care.

# II. The Dispositional Order is Not Inadequate

[23] Father also argues that the trial court's dispositional order is inadequate in that it does not meet certain statutory requirements. Father notes that, pursuant to Indiana Code section 31-34-19-10:

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>
> > (1) The needs of the child for care, treatment, rehabilitation, or placement.
> >
> > (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
> >
> > (3) Efforts made, if the child is a child in need of services, to:
> >
> > > (A) prevent the child's removal from; or
> > >
> > > (B) reunite the child with;
> >
> > the child's parent, guardian, or custodian in accordance with federal law.
> >
> > (4) Family services that were offered and provided to:
> >
> > > (A) a child in need of services; or
> > >
> > > (B) the child's parent, guardian, or custodian;
> >
> > in accordance with federal law.
> >
> > (5) The court's reasons for the disposition.
> >
> > (6) Whether the child is a dual status child under IC 31-41.
>
> (b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

[24] To the extent that B.R. claims that the trial court failed to enter written findings and conclusions at all, we disagree. The trial court's dispositional order is not particularly long or detailed, but it does, as permitted by section 31-34-19-10(b), incorporate by reference the predispositional report, which was much more detailed and comprehensive and included the family history, a list of Daughter's needs, a list of those consulted regarding Daughter's care, options for her placement, and a parental participation recommendation. *See McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 196 (Ind. Ct. App. 2003) (holding that trial court's dispositional order met statutory requirements where it incorporated by reference the predispositional report and review report that contained several pages of family history, background, placement options for the children, and OFC's recommendations).

[25] Father also argues that the trial court's dispositional order fails to address the need for his participation in Daughter's care. *See* I.C. § 31-34-19-10(a)(2). To the contrary, the trial court's dispositional order, and the pre-dispositional report incorporated therein, adequately address the issue of Father's participation in Daughter's care. First, the order notes that Father is incarcerated; thus, he obviously cannot directly participate in Daughter's care. Moreover, the decree provides that Father may have parenting time, subject to the approval of the service providers. Father was also ordered to contact DCS within seventy-two hours of his release from incarceration. We conclude that this sufficiently addresses the requirements of subsection 31-34-19-10(a)(2).

[26] Father next argues that the dispositional order does not address the efforts made to promote reunification of Father and Daughter. *See* I.C. § 31-34-19-10(a)(3). Although the trial court's dispositional order does not directly address the reunification efforts, the facts contained in the order demonstrate that the trial court considered such efforts. Indeed, the court determined that DCS offered reasonable services for the purposes of reuniting the family, obviously to no avail. Father is incarcerated, with an earliest possible release date of November 2022. Thus, Father is incapable of taking care of Daughter, and reunification is currently impossible. Thus, DCS was not required to offer reunification services to Father. *See Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006) (holding that the State is not required to offer a parent services aimed at reunification with the child when the parent is incarcerated), *trans. denied*. We do not think that DCS is required to continue to allow Daughter to linger in foster care for another five years until Father is released from incarceration. As this court has noted before, those who engage in criminal behavior run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. *In re E.P.*, 20 N.E.3d 915, 922 (Ind. Ct. App. 2014), *trans. denied*.

[27] Father also complains that the dispositional decree does not provide for services to be offered to him, other than to report to DCS when he is released from incarceration. However, the trial court noted that Father was participating in services offered by the Department of Correction. Moreover, it is well settled that DCS is not required to offer services to a parent while the parent is

incarcerated. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006), *trans. denied*; *see also In re H.L.*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009) (holding that father was not denied due process of law where DCS was unable to offer services to father or evaluate him for services due to his incarceration). In short, Father's arguments regarding the adequacy of the trial court's dispositional order are unavailing.

[28] Interspersed with his arguments regarding the adequacy of the dispositional order, Father also complains that DCS failed to make a truly diligent search to locate him, thereby leaving him "completely out of the picture between October of 2017 and September of 2018." Appellant's Br. at 18. To be sure, it appears that DCS should have been able to locate Father sooner, as a quick search of the Offender Locator service offered by the Department of Correction on the Internet would have indicated that Father was incarcerated.[3] But Father's complaints overlook the fact that, after Father was located, the trial court granted his motion to set aside its earlier default judgment against him and dismissed the petition to terminate parental rights.[4] Moreover, it appears that Father was incarcerated during this period, and he does not claim otherwise. Thus, even if DCS had been able to locate him during the period he now claims

---

[3] *See* https://www.in.gov/apps/indcorrection/ofs/ofs.

[4] In addition, Father admitted that he thought he was Daughter's biological father. Thus, if Father wanted to be a part of Daughter's life from the outset, he should have registered with the putative father registry.

he was "out of the picture," he would still have been unable to actively participate in Daughter's care.

## Conclusion

[29] The trial court did not clearly err in determining that Daughter was a child in need of services, as the DCS presented sufficient evidence that Daughter's physical or mental condition was seriously impaired or endangered by Father's inability, due to his incarceration, to provide for Daughter's needs. We also find no merit in Father's claims that the trial court's dispositional order failed to comply with the applicable statutory requirements. Accordingly, we affirm the order of the trial court.

[30] Affirmed.

Vaidik, C.J., and Crone, J., concur.